## EARLE ET AL. *v.* McVEIGH.

Where the statute of a State provided, that, during the absence of a party and all the members of his family, notice of a suit might be posted upon the front door of his "usual place of abode," — *Held*, that a notice posted upon a house seven months after it had been vacated by the defendant and his family, and while they were residing within the Confederate lines, was not posted upon his "usual place of abode," and that a judgment founded on such defective notice was absolutely void.

APPEAL from the Circuit Court of the United States for the Eastern District of Virginia.

*Mr. S. F. Beach* for the appellants.

*Mr. P. Phillips, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Due notice to the defendant is essential to the jurisdiction

of all courts, as sufficiently appears from the well-known legal maxim, that no one shall be condemned in his person or property without notice, and an opportunity to be heard in his defence. *Nations* v. *Johnson*, 24 How. 203.

Such notice may be actual or constructive, as prescribed by law. Where actual notice is required, personal service, in a legal manner, of due process, is a compliance with the requirement; and, in cases where constructive notice is allowed, the duty of the moving party is fulfilled if he complies in every respect with the law, usage, or rule of practice, as the case may be, which prescribes that mode of service.

Two suits were commenced by the respondents against the present complainant, and his son, who was not served, to enforce the payment of the several promissory notes described in the declarations in those suits; and the plaintiffs therein obtained service of process in the respective suits on the same day in the words following: —

"Executed the within summons Feb. 24, 1862, on James H. McVeigh, by leaving a copy thereof posted at the front door of his usual place of abode; neither he nor his wife, nor any white person, who is a member of his family and above the age of sixteen years, being found at his said usual place of abode."

Declarations in due form were filed in the respective suits; and, the defendant not appearing in either, judgment was rendered against him in the first suit for the sum of $3,535.49, and in the second for the sum of $8,014.34, with interest in each case, as set forth in the record.

Executions were regularly issued, and returns were made of *nulla bona;* and thereupon the creditors filed their bill of complaint in the county court, in which they set up the said judgments, and alleged that the defendant had no personal assets, and prayed that the lien of their judgments might be enforced by a sale of the real estate of the defendant for the satisfaction of the same; that the defendant might be required to answer the allegations of the bill of complaint; and that a commissioner might be appointed to report the real estate owned by defendant, together with the incumbrances, if any, upon the same; and that the court will enter such decree in the case as the circumstances may require.

Personal service could not be obtained; and, the defendant having failed to enter an appearance or to give bond as required, the court made an order of publication, and directed that a copy of the order be inserted in the "State Journal" once a week for four successive weeks, and that the same be posted at the front-door of the court-house of the county.

Proof of publication was exhibited, and the person appointed to ascertain what real estate was owned by the defendant made a report; and it appearing that the rents and profits of his real estate would not suffice to pay the plaintiffs' judgments, and others mentioned in the same report, within five years, the court did further order, adjudge, and decree that so much of the same as was requisite for the purpose should be sold at public auction, and prescribed the terms of sale, and appointed a commissioner to carry the decree into effect.

Pursuant to the decree of the court, the commissioner advertised the real estate for sale, as appears by a copy of the advertisement exhibited in the record. Enough appears to show that the sale of the real estate was postponed to a later day than that named in the advertisement, and that the defendant, in the mean time, filed an injunction-bond in the case, in which it is recited that the defendant had obtained from the judge of the eleventh circuit of the State an injunction enjoining and restraining the said creditors and the commissioner, until an order is granted by the county Circuit Court to the contrary, from any proceedings to enforce the payment of the said two judgments. Pending the temporary injunction, the defendant sued out a summons commanding the said judgment creditors to appear at the rules of the said court, on the day therein named, to answer to the bill of complaint filed in the said court by the debtor in the said judgments.

Sufficient appears to show that the intent and purpose of the bill of complaint were to obtain a decree enjoining and restraining the said judgment creditors from any proceeding to enforce the payment of the two judgments described in the aforesaid decree of sale; and with that view the judgment debtor alleged that the return to the process in each of those suits was false and fraudulent; that the process was not posted at the front-door of his usual place of abode as the law directs, and that the

respective judgments are illegal, and should be set aside; that the family of the debtor left there six weeks before the Federal forces occupied the place, and that the defendant in those suits left there and joined his family within the Confederate lines six days subsequent to the entry there of the Federal forces, and that he ever after remained with his family within the Confederate lines until the close of the war, and that these facts were well known to the judgment creditors and their counsel.

Service was made, and the judgment creditors appeared as respondents, and filed an answer.

Reference will only be made to a single allegation of the answer, as the others are not material in this investigation. They allege that the return of the process which led to the judgments in each of the two suits "was and is true in every particular, and was and is in no respect false and fraudulent; and that the process in each case was, in fact, executed in exact conformity with the return." No answer having been filed by the commissioner appointed to make the sale, the bill of complaint as to him was taken as confessed, and the complainant filed the general replication to the answer of the other respondents. Hearing was had upon the bill, exhibits, and answer, before the judge of the eleventh circuit of the State, pursuant to notice, and on the motion of the respondents to dissolve the temporary injunction; and it appears from the record that the motion of the respondents was overruled. Whereupon the respondents filed a petition praying for the removal of the cause into the next Circuit Court of the United States for the Eastern District of the State; and the record shows that the petition was granted.

Prior to the removal of the cause, the same had been set down for hearing, but no proofs had been taken; and, instead of taking proofs, the solicitors entered into a stipulation, that on the trial it should be admitted that the complainant was a resident of that city for many years prior to the Federal occupation during the rebellion; that during that time he was extensively engaged in business there, and was the head of a family, owning a dwelling-house, in which he resided, and other real estate; that he sympathized with the rebellion, but did not engage in the military or civil service of the insurgents; that his absence

from the city, throughout the rebellion, was not one which he regarded as absolute and permanent, but contingent and temporary, depending for its continuance upon the fortunes of the war.

Both parties were again heard in the Circuit Court of the United States; and the court entered a decree that the injunction heretofore granted in the cause be perpetuated, and that the respondents pay to the complainant his costs; and the respondents entered an appeal to this court.

Argument to show that no person can be bound by a judgment, or any proceeding conducive thereto, to which he was never a party or privy, is quite unnecessary, as no person can be considered in default with respect to that which it never was incumbent upon him to fulfil. Standard authorities lay down the rule, that, in order to give any binding effect to a judgment, it is essential that the court should have jurisdiction of the person and the subject-matter; and it is equally clear that the want of jurisdiction is a matter that may always be set up against a judgment when sought to be enforced, or where any benefit is claimed under it, as the want of jurisdiction makes it utterly void and unavailable for any purpose. *Borden* v. *Fitch*, 15 Johns. 141.

Notice to the defendant, actual or constructive, is an essential prerequisite of jurisdiction. Due process with personal service, as a general rule, is sufficient in all cases; and such it is believed is the law of the State where the judgments were recovered in this controversy, in all cases where such service is practicable. But the laws of that State also provide for service in three classes of cases in which personal service cannot be effected: (1.) Residents who are temporarily absent from home. (2.) Service may also be made upon persons not residents of the State. (3.) Where the party resides in the State, in case it is not known in what particular county he has his residence.

1. Temporary absence from home will not defeat service, as in that case the statute provides that notice may be given to the party by delivering a copy of the process to the party in person; or, if he be not found at his usual place of abode, by delivering such copy and giving information of its purport to his wife, or any white person found there, who is a member of his family,

and above the age of sixteen years; or, if neither he nor his wife nor any such white person be found there, by leaving such copy posted at the front-door of his usual place of abode.

2. Persons not residing in the State may, in a proper case, be served by the publication of the notice once a week for four consecutive weeks in a newspaper printed in the State. Code 1860, p. 703.

3. Provision is made in respect to the third class, that on affidavit that a defendant is a non-resident of the State, or that diligence has been used to ascertain in what county or corporation he is, without effect, or that process directed to the officer of the county or corporation in which he resides or is has been twice delivered to such officer more than ten days before the return-day, and been returned without being executed, an order of publication may be entered against such defendant. Code, p. 707.

Doubtless constructive notice may be sufficient in certain cases; but it can only be admitted in cases coming fairly within the provisions of the statute authorizing courts to make orders for publication, and providing that the publication, when made, shall authorize the court to decide and decree. *Hollingsworth* v. *Barbour*, 4 Pet. 475; *Regina* v. *Lightfoot*, 26 Eng. L. & Eq. 177; *Nations* v. *Johnson*, 24 How. 205; *Galpin* v. *Page*, 18 Wall. 369.

When the law provides that notice may be posted on the "front-door of the party's usual place of abode," in the absence of the family, the intention evidently is that the person against whom the notice is directed should then be living or have his home in the said house. He may be temporarily absent at the time the notice is posted; but the house must be his usual place of abode, so that, when he returns home, the copy of the process posted on the front-door will operate as notice; which is all that the law requires. By the expression, "the usual place of abode," the law does not mean the last place of abode; for a party may change his place of abode every month in the year. Instead of that, it is only on the door of his then present residence where the notice may be posted, and constitute a compliance with the legal requirement.

Apply that rule to the case before the court, and it is clear

that the notice was insufficient. Neither the complainant nor his family resided there : on the contrary, the case shows that his family left that city six weeks before the same was occupied by the Federal forces, and that they departed, leaving no white person in the house from which they departed, and that these facts were well known to the attorney of the respondents and to the officer who made the returns in question, which was made seven months after the complainant had left the county and was residing within the Confederate lines.

Tested by these considerations, it is clear that the house where the notice, if any, was posted, was not at that time the usual place of abode of the defendant in those suits ; and it follows that the judgments founded on such defective notices are absolutely void.

Special reference is made to the act of the 10th of February, 1862, as having some bearing on the case ; but the record shows that the present complainant had left his former residence seven months before the passage of that act, and followed his family within the insurgent lines. He abandoned the business in which he was engaged and was known, as is admitted in the stipulation of the parties, throughout the whole period of the rebellion, as having sympathized with it, and adhered to its fortunes.

Other defences failing, it is suggested by the respondents that the complainant, when he departed from the city, left an agent resident there ; but it is a sufficient answer to that suggestion to say that the agent referred to did not reside in the house where it is alleged the notices were posted, and that he had no authority whatever to accept or waive notice to the complainant in any such proceeding.

Concede that due service might have been made under the act providing for proceedings against non-residents : still it is clear that the concession cannot benefit the respondents, as they did not attempt to comply with the conditions contained in either section of that act. Sess. Acts, 1861, p. 58.

Viewed in any light, it is plain that the case falls within the rule that the service of process by posting a copy on the door of a dwelling-house is not a good service, if it appears by competent evidence that the house was not the usual place where the

defendant or his family resided at the time the notice was posted. *Harris* v. *Hardeman*, 14 How. 340; *Buchanan* v. *Rucker*, 9 East, 192; *Boswell* v. *Otis*, 9 How. 350; *Oakley* v. *Aspinwall*, 4 Comst. 513.

Even in proceedings *in rem*, notice is requisite in order that the sentence may have any validity. Every person, said Marshall, C. J., may make himself a party to such a proceeding, and appeal from the sentence, but notice of the controversy is necessary in order that one may become a party; and it is a principle of natural justice, of universal obligation, that, before the rights of an individual can be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him. *The Mary*, 9 Cranch, 144.

No man shall be condemned in his person or property without notice, and an opportunity to be heard in his defence, is a maxim of universal application; and it affords the rule of decision in this case.    *Decree affirmed.*