## SQUAIR *v.* LOOKOUT MOUNTAIN Co. *et al.*

*(Circuit Court, E. D. Tennessee, S. D.* June 17, 1890.)

EQUITY PLEADING—SUITS AGAINST CORPORATIONS.
  Under equity rule 94, which provides that every bill brought by one or more stockholders against a corporation and others, founded on rights which may properly be asserted by the corporation, must set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the directors, and, if necessary, of the shareholders, and the causes of his failure to obtain such action, the court has no jurisdiction of a bill to enjoin the transfer of part of the stock of the defendant to another corporation, which fails to set forth such efforts, though it allege that the directors of the one corporation are also directors of the other, that it would have been useless for plaintiff to demand that they would bring suit, and that plaintiff would have made such demand had he not known that they would refuse. Following *Hawes* v. *Oakland,* 104 U. S. 460.

In Equity. On motion to dismiss the bill for want of jurisdiction.

KEY, J. The complainant alleges that he is a stockholder in the Lookout Mountain Company; that said company was organized as a statutory real-estate and immigration corporation under the laws of Tennessee, with a capital stock of $1,000,000, but that only $600,000 of said stock were subscribed for; that about 700 acres of land were purchased by the company upon the top and sides of Lookout mountain, valued at $600,000. Books for the the subscription of stock were opened, and $600,000 of the stock only was authorized to be subscribed for and issued, but the remaining $400,000 of the stock has never been subscribed for or issued. It is further alleged that the individual defendants are seven of the nine directors of the company, and that they hold a majority of the stock of the company. Complainant avers that he is the owner of 143 shares of the stock of the company, each share being $100; that 133 of these shares were transferred to him July 14, 1887; that on the 28th of July, 1887, the other defendants, by some fraudulent and unauthorized scheme or contrivance, undertook to transfer and issue to the Chattanooga & Lookout Mountain Railway Company the $400,000 of stock in the Lookout Mountain Company which had not been subscribed for. It is charged that those defendants intended at the time this stock was so issued and donated to become stockholders in the Chattanooga & Lookout Railway Company, and that they did be-

come such, and become seven of the railway company's nine directors, so that this stock is now claimed by these defendants, who it is alleged constitute a majority of the directors, and own a majority of the stock in both corporations. The Chattanooga & Lookout Mountain Railway Company is a Tennessee corporation, and the defendants are citizens of Tennessee. The complainant is a citizen of Ohio, and alleges that he had no notice of these transactions until May 28, 1890. The present matter for consideration is whether an injunction shall issue restraining any transfer or incumbrance of the stock. Defendants insist that this court has no jurisdiction of the cause, and that, so far from an injunction being awarded, the bill should be dismissed.

The first question with which we are confronted does not arise upon the merits of the case made in the bill, but whether the allegations of the bill are such as are necessary to invest this court with jurisdiction of the case. Rule 94 prescribed by the supreme court for equity proceedings in this court says:

"Every bill brought by one or more stockholders in a corporation against the corporation and other parties, founded on rights which may properly be asserted by the corporation, must be verified by oath, and must contain an allegation that the plaintiff was a shareholder at the time of the transaction of which he complains, or that his share had devolved on him since by operation of law, and that the suit is not a collusive one, to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance. It must also set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action."

In *Hawes* v. *Oakland,* 104 U. S. 460, 461, the court says:

"To enable a stockholder in a corporation to sustain in a court of equity, in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist, as a foundation of the suit, some action or threatened action of the managing board of directors or trustees of the corporation, which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction completed or contemplated by the acting managers in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury to the corporation, or to the interests of the other shareholders; or where the board of directors or a majority of them are acting for their own interest in a manner destructive of the corporation itself, or of the rights of the other shareholders; or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity. * * * But, in addition to the existence of grievances which call for this kind of relief, it is equally important that, before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain within the corporation itself the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he

must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it. The efforts to induce such action as complainant desires on the part of the directors and of the shareholders, when that is necessary, and the cause of failure in these efforts, should be stated with particularity."

The decision and the rule predicated upon it are specific and mandatory in their requirements. The bill under consideration makes no averment of any effort on complainant's part to secure the action he desired of either the directors or stockholders. On the contrary, the bill shows that no such effort was made. On this point the bill says:

"The board of directors of the Lookout Mountain Company is the same now, with one exception, as it was when these illegal and fraudulent acts were committed by them, and all them, except two, are the principal stockholders of the Chattanooga & Lookout Mountain Railway Company, and the board is under their control, and, of course, it would have been useless for him to make a demand on them to institute a suit to recover the stock; but he would have made said application had he not known that they would refuse."

The complainant seems to believe that a demand of the directors for suit is all that rule 94 requires. The language of the rule does not support in the slightest degree such an inference. It provides that "every bill brought by one or more stockholders in a corporation, against the corporation and other parties, founded on rights which may properly be asserted by the corporation, * * * must set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action."

As to the directors or trustees, the language is positive and mandatory. The nature of his efforts and the causes of his failure must be stated, as to them, with particularity, and, if necessary, he must show like efforts with the shareholders, and the causes of failure with them. The bill may show that there was no necessity for efforts to be made with the shareholders, but not so as to the directors.

The language of the rule and of the decision in the case of *Hawes* v. *Oakland, supra*, implies, indeed more than implies, that action of the directors and trustees, as well as shareholders, complained of must almost necessarily be the action of a majority of them. Justice MILLER, in the case referred to, groups in four classes the wrongs for which bills may be maintained: (1) Some action or threatened action of the managing board of directors or trustees which is beyond the scope of their powers. (2) Such fraudulent transaction completed or contemplated by the acting managers, in connection with some other party or among themselves, or with other shareholders, as will result in serious injury to the corporation or its shareholders. (3) When the board of directors, or a majority of them, are acting for their own interests in a manner destructive of the corporation itself, or of the rights of the shareholders. (4) Where the majority of the shareholders are oppressively and illegally pursuing

a course in the name of the corporation in violation of the rights of the other shareholders.

All these classes embrace action of the directors officially, and not individually, and necessarily action by all or a majority of them, and classes 3 and 4 in positive terms embrace action by a majority of the directors and shareholders; and yet, in these cases, precisely similar to the one in hand, so far as some of them are concerned, the learned and great judge says the complainant "should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court." 104 U. S. 460, 461.

Complainant attempts to excuse and justify his failure to do these things by maintaining that when a majority of the managing directors or of the stockholders of a corporation do, or undertake to do, an illegal, fraudulent, or corrupt act, it is unreasonable to suppose they will refrain from doing the act, or will revoke it, and restore the former and just condition of things, although every possible effort be made to induce them to do so, and therefore it is unnecessary to make any effort in this direction. There is nothing to support this position, but everything is against it. It will not do to permit complainant's judgment and opinion to nullify and abrogate the rule. *Dimpfell* v. *Railroad*, 110 U. S. 209, 211, 3 Sup. Ct. Rep. 573; *Quincy* v. *Steel*, 120 U. S. 244, 248, 7 Sup. Ct. Rep. 520.

But if all these things were out of the way, does complainant's bill make a case for the injunctive interposition of the court? As the case stands, all the allegations of the bill properly pleaded must be regarded as true. Complainant says that he became the owner of all his stock but ten shares, July 14, 1887; that two weeks after, the bargain or transaction complained of between the two corporations took place, but that he never heard of it until May 28, 1890. He filed his bill June 9, 1890. Why and how he slept upon his rights for almost three years does not appear. A court, especially here in Chattanooga, must know something of the history and geographical situation of the two corporations assailed by the bill. The bill avers that the property of the Lookout Mountain Company consists of lands upon the top and sides of Lookout mountain, and we know that they are upon the end of the mountain next to Chattanooga and the Tennessee river. We know that the chief value of these lands depends upon their becoming a summer resort, and being purchased as homes for the people during the heat of summer. To bring them into profitable market, it is necessary to have easy, safe, and rapid access to and egress from them. A railroad becomes not only useful, but important, not to say necessary, in the successful disposition and use of these lands. Then, again, a railroad running from the railways at the base of the mountain up to and along its top must depend for profitable business upon the population upon the mountain. The more the peo-

ple—the more numerous the homes upon the mountain—the greater the operations of the railroad. The interests of the land company and the railroad company are so interdependent and blended as to become essentially the same, and the prosperity of one necessarily builds up and impels the success of the other. Surrounded and attended by these considerations, it was the part of wisdom and successful enterprise on the part of the directors of the land company to aid and encourage by all legitimate means the construction of a railroad to and through the property of their corporation. Another thing a judge must know is something of the reputation and standing of those who are his neighbors, and reside in the same community with him. The directors who are sued in this case are among our leading business men, gentlemen of high and honorable character, whom the law, as well as their neighbors, presumes to be honest. When we hear that gentlemen of such high character for integrity and good business judgment have represented their corporation in a transaction of confessedly great importance in promoting the interests of their corporation, we should not hastily conclude that their action was corrupt and fraudulent, although some question might arise as to whether they had power to do the act complained of. The case made by this bill shows not only the propriety, but the necessity, for rule 94. Here is a complainant whose eyes and ears were closed during the whole period during which this railroad was being constructed; but after it is completed, and the property of his corporation has received, and is enjoying the benefits of its construction and operation, he wakes up, and, within 12 days after he hears of the transaction of which he complains, he files this bill. Did not a sense of justice and fair dealing demand that he should have called upon the directors, and asked for an explanation of the transaction? Then, if they failed to satisfy him of the good faith or the legality of the transaction, he should have made an earnest effort to induce them to do what he conceived to be just in and by his corporation. Failing in this, then he might have appealed to the courts. I regard it that it is not only clear that an injunction should not be granted, but I think the motion to dismiss the bill because it fails to meet the requirements of rule 94, and of the decision in *Hawes* v. *Oakland, supra,* is well taken; and, unless complainant by the rule-day in July next, shall so amend his bill as to obviate these defects and objections, his bill will be dismissed.