## HARLESS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 20, 1898.)

### No. 1,050.

CIRCUIT COURTS OF APPEAL—CRIMINAL JURISDICTION—CRIMES IN INDIAN TERRI-
TORY.

In the act of March 1, 1895, creating a court of appeals for the Indian
Territory, and giving it full jurisdiction, civil and criminal, the provision
of section 11 that "writs of error and appeals from the final decision of
said appellate court shall be allowed, and may be taken to the circuit court
of appeals for the Eighth judicial circuit, in the same manner and under
the same regulations as appeals are taken from the circuit courts of the
United States," conferred upon that court full appellate jurisdiction, in-
cluding that in cases of infamous crimes, which was theretofore vested
in the United States supreme court.

In Error to the United States Court of Appeals in the Indian Ter-
ritory.

Thomas Marcum, Thomas Owen, J. H. Koogler, John Watkins
William M. Mellette, and Edgar Smith, for plaintiff in error.

P. L. Soper, U. S. Atty. (L. F. Parker, Jr., Asst. U. S. Atty., on
brief), for the United States.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS,
District Judge.

SHIRAS, District Judge. Plaintiff in error was indicted in the
United States court, in the Indian Territory, for larceny and receiv-
ing stolen property, and, upon trial, was found guilty, and sentenced
to imprisonment for two years and six months. By appeal he carried
the case before the United States court of appeals for the territory,
by which the sentence and judgment of the trial court were af-
firmed; and thereupon a writ of error from this court was sued
out to the territorial appellate court, and, the transcript having been
duly filed in this court, the United States now moves for a dismissal
of the writ, on the ground that a writ of error will not lie from this
court to the appellate court of the Indian Territory in cases of infa-
mous crimes, or, in other words, that jurisdiction in this court does
not exist in cases of infamous crimes committed in the Indian Terri-
tory.

In support of the motion to dismiss, it is argued that under the
provisions of the act of March 3, 1891, creating the courts of appeal,
jurisdiction in cases of infamous crimes was not conferred upon the
courts of appeal, but by section 5 of the act was conferred upon the
supreme court, and that it was not until the adoption of the act of
January 20, 1897 (29 Stat. 492), amendatory of the act of 1891, that
the circuit courts of appeal could entertain jurisdiction in cases of
infamous crimes, and that this amendatory act has only the effect
of transferring to the several circuit courts of appeal the then exist-
ing jurisdiction of the supreme court over cases of infamous crimes,
and that, when this act took effect, the supreme court did not have
jurisdiction over such cases in the Indian Territory, because the

jurisdiction conferred upon the supreme court over such cases in the Indian Territory, by the act of 1891, had been taken away by the subsequent act of March 1, 1895 (28 Stat. 693), creating an appellate court for the territory, and, therefore, there was no existing jurisdiction in the supreme court in such cases to be transferred to this court by force of the provisions of the act of 1897.

In determining the question of the extent of the jurisdiction of this court over the courts of the Indian Territory, regard must be primarily paid to the acts of congress creating and enlarging, from time to time, the courts and judicial system of the territory.

Previous to the adoption of the act of March 1, 1889 (25 Stat. 783), creating a United States trial court in the Indian Territory, the jurisdiction in criminal cases arising in the territory was apportioned between the United States courts in the Northern district of Texas, the Western district of Arkansas, and the district of Kansas. No appeal or writ of error was provided for until the adoption of the general act of February 6, 1889 (25 Stat. 655), which authorized the issuance of the writ of error from the supreme court to any court of the United States in capital cases. By the act of March 1, 1889, a United States trial court was created for the territory; and by section 5 of the act it was declared "that the court hereby established shall have exclusive original jurisdiction over all offenses against the laws of the United States committed within the Indian Territory, as in this act defined, not punishable by death or by imprisonment at hard labor"; thus leaving the jurisdiction in the latter class of cases in the United States courts of Texas and Arkansas.

The act of May 2, 1890 (26 Stat. 81), enlarged the jurisdiction of the trial court of the territory by putting in force therein the provisions of chapter 45 of the General Laws of the State of Arkansas, entitled "Criminal Law," and conferring jurisdiction over the offenses therein defined upon the territorial court, subject to the proviso that the United States courts in the Eastern district of Texas and Western district of Arkansas "shall continue to exercise exclusive jurisdiction over all crimes and misdemeanors against the laws of the United States applicable to the said territory, which are punishable by the laws of the United States by death or by imprisonment at hard labor, except as otherwise provided in the following sections of this act." These sections, numbered 34, 35, and 36, conferred upon the territorial court jurisdiction over many infamous offenses, so that in effect the jurisdiction over this class of cases was apportioned between the territorial court and the courts of the Eastern district of Texas and Western district of Arkansas, being in some instances concurrent. By section 42 of the act it was declared "that appeals and writs of error may be taken and prosecuted from the decisions of the United States court in the Indian Territory to the supreme court of the United States, in the same manner and under the same regulations as from the circuit courts of the United States, except as otherwise provided in this act."

The next act in sequence of time, affecting the question, is that of March 3, 1891 (26 Stat. 826), creating the circuit courts of appeals, which provided, in section 5, that writs of error from the supreme

court might be taken to the circuit and district courts in cases of conviction of a capital or otherwise infamous crime, and in other criminal cases jurisdiction was conferred on the proper circuit court of appeals. By section 13 of the act it was provided that appeals and writs of error may be taken and prosecuted from the decisions of the United States court in the Indian Territory to the supreme court of the United States, or to the circuit court of appeals in the Eighth circuit, in the same manner and under the same regulations as from the circuit and district courts of the United States under this act. In McLish v. Roff, 141 U. S. 661, 12 Sup. Ct. 118, it was held that this act "provides for the distribution of the entire appellate jurisdiction of our national judicial system between the supreme court of the United States and the circuit court of appeals, therein established, by designating the classes of cases in respect of which each of those courts shall respectively have final jurisdiction." It thus clearly appears that, if the case now under consideration had been heard in the trial court of the territory at any time when these provisions of the act of 1891 were in force in the territory, the case could have been carried by writ of error before the supreme court. In other words, when the act of 1891 took effect, the supreme court had jurisdiction, by writ of error, in all cases wherein a conviction for an infamous crime was had in any circuit or district court of the United States or in the United States court in the Indian Territory.

By the provisions of the act of January 20, 1897 (29 Stat. 492), the jurisdiction over cases of infamous crimes is taken away from the supreme court, and is conferred upon the circuit courts of appeals; so that there can be no question that had the conviction in the case now before the court been had in a circuit or district court of the United States, subsequent to January 20, 1897, this court would have had jurisdiction therein. It is contended, however, that this jurisdiction does not exist over infamous cases arising in the Indian Territory, on the ground that the act of March 1, 1895 (28 Stat. 693), had deprived the supreme court of jurisdiction over infamous crimes in the Indian Territory, and therefore the act of 1897 did not confer this jurisdiction on this court, it being in terms limited to cases arising in the district and circuit courts. The act of 1895 was practically intended to create a judicial system for the Indian Territory. It enlarged the civil jurisdiction of the trial court, and by section 9 it deprived the courts of Texas, Arkansas, and Kansas of all criminal jurisdiction after September 1, 1896, over cases arising in the territory, and conferred the entire criminal jurisdiction, after that date, on the territorial court. In re Johnson, 167 U. S. 120, 17 Sup. Ct. 735. In section 11 it provided for a court of appeals for the territory, and enacted that all appeals and writs of error in criminal cases should be taken to the appellate court created by the act; and it is by reason of this provision that it is contended that the pre existing jurisdiction of the supreme court over convictions in infamous cases was terminated, and therefore the act of 1897 did not transfer jurisdiction to this court, in such cases arising in the territory, because no such jurisdiction then existed in the supreme court. But the jurisdiction of this court is not dependent upon the provisions of the act of 1897,

but upon those of section 11 of the act of 1895, which, after creating a court of appeals for the territory and for the taking of all cases, civil and criminal, to that court from the trial court on appeal or writ of error, further enacts that "writs of error and appeals from the final decision of said appellate court shall be allowed, and may be taken to the circuit court of appeals for the Eighth judicial circuit, in the same manner and under the same regulations as appeals are taken from the circuit courts of the United States." Thus, we have a specific grant to this court of jurisdiction over the final decisions of the appellate court of the territory, which may be said to be open to two constructions: First, that it is a grant of jurisdiction over every case finally decided by the appellate court, the latter clause of the paragraph being intended to point out the manner and method for securing the right of appeal created by the preceding portion of the sentence or paragraph; or, second, that it is a grant of jurisdiction over the final decisions of the appellate court in all cases wherein jurisdiction in this court would exist if the decision had been rendered in a circuit court of the United States.

If the first construction is the proper one, then the jurisdiction of this court is beyond all fair question; and we are of the opinion that this is the true meaning of the clause under consideration. Section 11 of the act creates a court of appeals for the territory, and enacts that it shall have the same supervisory power over the trial courts as is possessed by the supreme court of Arkansas over the trial courts of that state; and, appellate jurisdiction in civil and criminal cases having been thus conferred, it is then enacted that writs of error and appeals from the final decision of said appellate court shall be allowed, and may be taken to this court, in the same manner and under the same regulations as appeals are taken from the circuit courts. The natural construction of this clause makes it include all final decisions of the appellate court. The clause was enacted to confer an appellate jurisdiction upon this court over the territorial appellate court. When this subject-matter was before congress for consideration, two questions would naturally arise: First, what shall be the extent of the jurisdiction proposed to be conferred upon the court of appeals for the Eighth circuit over the decisions of the territorial court; and, second, how shall this jurisdiction be exercised? The first question was answered by enacting that "writs of error and appeals from the final decision of said appellate court shall be allowed and may be taken to the circuit court of appeals for the Eighth judicial circuit"; and the second question was answered by the words, "in the same manner and under the same regulations as appeals are taken from the circuit courts of the United States." The words creating the appellate jurisdiction in this court are general in their import, and it is difficult to see in what way a more unlimited jurisdiction could have been created in this court over the final decisions of the territorial court than is provided for in this clause of the section; and the contention that the addition of the words "in the same manner and under the same regulations as appeals are taken from the circuit courts of the United States" must be construed to be a limitation upon the previously granted jurisdiction is not well founded.

They refer solely to the mode in which the previously granted right of appeal is to be exercised.

The distinction to be made between statutes containing a general grant of jurisdiction and those intended to be limited to particular cases only is well illustrated by the statutes construed by the supreme court in the cases of In re Heath, 144 U. S. 92, 12 Sup. Ct. 615, and Folsom v. U. S., 160 U. S. 121, 16 Sup. Ct. 222, cited and relied upon by counsel for the government. In the former case a writ of error from the supreme court of the United States to the supreme court of the District of Columbia was sought under the provisions of section 846 of the Revised Statutes of the District of Columbia, which enacts that "any final judgment, order or decree of the supreme court of the district may be re-examined and reversed or affirmed in the supreme court of the United States upon writ of error or appeal, in the same cases and in the like manner as provided by law in reference to the final judgments, orders and decrees of the circuit court of the United States." This statute, by the use of the apt words "in the same cases," clearly restricted the appellate jurisdiction of the supreme court over the judgments of the supreme court of the District of Columbia to the cases in which appellate jurisdiction existed over judgments of the circuit courts of the United States. In the case of Folsom v. U. S., a case certified from this court to the supreme court, and involving the question whether this court had jurisdiction to review the judgment of the supreme court of the territory of New Mexico in cases of infamous crimes (the case arising before the adoption of the act of 1897), it was held by the supreme court that the question turned upon the construction to be given to section 15 of the act of 1891, creating the circuit courts of appeals, which in substance provides that, in cases wherein the decision of the court of appeals is made final by section 6 of the act, that court shall have the same right to review the final judgments of the supreme courts of the several territories as is conferred by the act to review the judgments of the district and circuit courts. The supreme court held that this section did not include a general grant of jurisdiction, but that it was specific and limited, and did not extend to the decisions of the territorial court of New Mexico, in cases of infamous crimes, because such jurisdiction did not then exist in the court of appeals in cases pending in the district and circuit courts.

The restrictive terms found in the statutes construed in these cases are not found in the act creating the judicial system for the Indian Territory. The provisions of section 11 of the act creating the court of appeals for the territory, and conferring jurisdiction thereon over cases heard in the trial courts, do not refer to the jurisdiction of the district and circuit courts of the United States, and the extent of the jurisdiction of the territorial court of appeals is not in any particular controlled by the statutes creating the jurisdiction of the district and circuit courts; and, when the section proceeds to declare that the final decisions of the territorial appellate court may be reviewed in this court, it can only refer to final decisions rendered by the appellate court in the exercise of the jurisdiction conferred on it by the preceding portions of the section, which jurisdiction, as

already stated, is not in any way measured or limited by the jurisdiction of the district or circuit courts; and therefore, if we give to the words creating the appellate jurisdiction of this court their plain and ordinary meaning, it must be held that the jurisdiction of this court extends to all final decisions rendered in the territorial appellate court. Unless this is the proper construction of the act, it follows that the decisions of the territorial appellate court in convictions for infamous crimes cannot be appealed from, but that an appeal to this court does exist in all cases not infamous. It is true that, if the language of the statute demands this construction, the court is not justified in refusing to follow the plain meaning of the statute, by reason of the apparently absurd result caused thereby. Folsom v. U. S., 160 U. S. 121, 16 Sup. Ct. 222. It is equally true that, if the words of a statute are susceptible of more than one meaning, the absurdity of the result of one construction is a strong argument against its adoption. Thus, in Lau Ow Bew v. U. S., 144 U. S. 47, 12 Sup. Ct. 517, it is said: "Nothing is better settled than that statutes should receive a sensible construction, such 'as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." No reason can be assigned in support of the view that congress intended to deny an appeal in cases of infamous crimes, and to confer it in cases of misdemeanor; and therefore no reason exists for construing the clause of section 11 of the act of 1895, which confers jurisdiction upon this court over the final decisions of the appellate court of the territory, in such a manner as to confer jurisdiction in minor cases, while denying it in cases of greater importance. If the language of the section was such as to clearly show that jurisdiction was not conferred upon this court in the latter class of cases, then it could not be inferred simply to avoid an apparently absurd result (Folsom v. U. S., supra); but when, as in this case, the words of the section conferring the jurisdiction are broad enough to include convictions for infamous and noninfamous crimes alike, the court is not required to give an enlarged meaning to the words "in the same manner and under the same regulations as appeals are taken from the circuit courts," in order that the jurisdiction over convictions for infamous crimes shall be denied, while it exists over cases of less gravity. We hold, therefore, that section 11 of the act of 1895 confers upon this court appellate jurisdiction over the final decisions of the court of appeals of the Indian Territory; and, so holding, it follows that the motion to dismiss for want of jurisdiction must be, and is, overruled.