GAGE et al. v. RIVERSIDE TRUST CO., Limited, et al.

(Circuit Court, S. D. California, S. D. December 10, 1906.)

No. 1,223.

1. PROCESS—SUBSTITUTED SERVICE—POWER OF FEDERAL COURT TO AUTHORIZE.
   On motion to vacate an order for substituted service made in a suit purporting to have been brought under Federal Judiciary Act March 3, 1875, c. 137, § 8, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], which authorizes such service in local actions relating to property within the district, the court must examine the bill, and the order should be set aside unless the bill affirmatively shows sufficient grounds for relief under such statute and complainants' right to maintain the suit.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Process, § 221.]

2. CORPORATIONS—EQUITY—JURISDICTION—ADMINISTRATION OF ESTATE OF COR-
   PORATION.
   A court of equity can administer the property of a corporation as a trust fund for the benefit of stockholders and creditors only when the corporation is insolvent.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1574, 1575.]

3. PROCESS—SUBSTITUTED SERVICE—CONSTRUCTION OF STATUTE.
   Statutes authorizing substituted service are to be strictly construed.

4. CANCELLATION OF INSTRUMENTS—PLEADING—SUFFICIENCY OF BILL.
   A bill in equity for the cancellation of a trust deed and mortgages, on the ground of fraud and conspiracy, held not to allege sufficient facts to authorize such relief.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Cancellation of Instruments, §§ 66–81.]

5. CORPORATIONS—STOCKHOLDERS' SUITS—FAILURE TO COMPLY WITH EQUITY
   RULE 94.
   Without a compliance with equity rule 94 a stockholder can no more maintain a suit in equity in a federal court founded upon rights which may properly be asserted by the corporation, than an entire stranger to the corporation and its property; and a failure to comply with the rule is available against an order for substituted service on defendants, as well as on the merits, where it affects the alignment of the parties, and in that way the court's jurisdiction.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 777, 778.]

6. COURTS—JURISDICTION OF FEDERAL COURT—DIVERSITY OF CITIZENSHIP.
   To confer jurisdiction on a federal court, where there are several plaintiffs and defendants, all necessary parties on one side must be citizens of a state, and all on the other side must be citizens of another state or foreign country.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 855.]

7. SAME—SUIT BETWEEN ALIENS.
   The federal courts are without jurisdiction of a suit between aliens, where no federal question is involved.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 847.]

**8. SAME—ALIGNMENT OF PARTIES.**

In determining the question of federal jurisdiction, where it depends solely on diverse citizenship, it is the duty of the court to arrange the parties on the one side or the other according to their interests or the facts, regardless of the places they occupy in the pleadings as plaintiffs or defendants.

**9. SAME—STOCKHOLDERS' SUIT.**

In a stockholders' suit in a federal court to remove an alleged fraudulent lien from the property of the corporation, where the complainant has not complied with equity rule 94, the corporation will be aligned on the side of the complainant.

**10. DISMISSAL—WANT OF JURISDICTION.**

Where the jurisdiction of a federal court of a suit in equity depends alone on diversity of citizenship, and a proper realignment of parties discloses its want of jurisdiction, it is the court's duty to dismiss the suit on its own motion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Dismissal and Nonsuit, § 160.]

In Equity. On motions to vacate order for substituted service.

Purington & Adair and J. S. Chapman, for complainant.
M. B. Kellogg, John G. North, and Hunsaker & Britt, for defendants.

WELLBORN, District Judge. Said motions involve and depend largely upon the construction of section 8 of Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], which provides, among other things, as follows:

"That when in any suit, commenced in any circuit court of the United States, to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendants to appear, plead, answer, or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. But said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district."

There is no question but that, on a motion to vacate an order for substituted service made under said section, the court must examine the bill in order to ascertain whether or not the case is within the statute; and the first question to be determined on this hearing relates to the scope or extent of such examination. Is it sufficient for the complainant, with such facts alleged in his bill as indicate his good faith and relieve the case from a charge of frivolousness, to pray for one or more of the objects enumerated in said section, or must he also show himself entitled to such relief?

I am of opinion, that an affirmative response to the last clause of this question embodies the law. Certainly substituted service would not be authorized in a case where the bill, although specifically demanding the relief mentioned in the statute, clearly negatived complainant's right

thereto; and it seems to me, after careful consideration of the statute, its phraseology and manifest purpose, that such service ought not to be had in any case unless the complainant affirmatively shows his right to the relief, which alone justifies the service. It would be illogical and unreasonable to hold that a statute designed solely to enable a complainant to accomplish certain specified objects includes a case where, from complainants' own showing, it does not appear that either of said objects is attainable. I am forced to conclude that to justify an order for substituted service the bill, if the suit be in equity, should show: First, sufficient grounds for the relief mentioned in the statute; and, second, complainant's right to maintain the suit.

This conclusion is in no way impaired by the contention that it is the office of a general demurrer to determine the sufficiency of a pleading. Nonresident defendants may, unquestionably, if they see fit to do so, thus contest the equities of a bill, but, if the service upon them be invalid, it is no answer to a motion to set it aside to say that the grounds of the motion involve objections, which might, under other procedure, be appropriately raised at a later stage of the case. Nor is such an objection, when made by a defendant, on a motion to vacate an order for substituted service, a general appearance, because, if a plaintiff, to avail himself of the procedure which the statute affords, but expressly limits to particular relief, must, as I have held, show on the face of the bill his right to such relief, then facts, which would otherwise be heard only on the merits, must necessarily be considered in determining the legality of the service.

The authorities cited in complainants' brief do not, so far as I have been able to discover, militate against the views above expressed. From Greeley v. Lowe, 155 U. S. 75, 15 Sup. Ct. 28 (39 L. Ed. 69), complainants quote as follows:

"These objections, however, are not within the question certified to us for decision, which is that it had been 'adjudged and decreed that this court has not jurisdiction over all of the defendants to this action because they are not all citizens and residents of the district in which the land sought to be partitioned lies, and are not all found in said district at the time of service of process, although they are all residents and citizens of other states than that in which complainants have residence and citizenship.' The objections go not to the jurisdiction of the federal court as such, but to the maintenance of such a bill in any court of equity in the state of Florida."

Even a cursory examination, however, of that case, shows that the jurisdictional question there involved concerned solely the residences of defendants, while in the case at bar the question of jurisdiction depends entirely upon the stating part and prayer of the bill. The two cases therefore are readily distinguishable, and the quotation from the former is inapplicable to the latter.

Another rule to be observed on this hearing is that a court of equity can administer the property of a corporation as a trust fund for the benefit of stockholders and creditors only when the corporation is insolvent. Mellen v. Moline Malleable Iron Works, 131 U. S. 352, 9 Sup. Ct. 781, 33 L. Ed. 178. It must also be borne in mind that statutes authorizing substituted service are to be strictly construed. Galpin v. Page, 85 U. S. 350, 21 L. Ed. 959; Earle v. McVeigh, 91 U. S.

503, 23 L. Ed. 398; Settlemier v. Sullivan, 99 U. S. 444, 24 L. Ed. 1110; Woolridge v. McKenna (C. C.) 8 Fed. 680; Batt v. Procter (C. C.) 45 Fed. 516; Winter v. Koon, Schwarz & Co. (C. C.) 132 Fed. 27.

In Galpin v. Page, supra, the Supreme Court said:

"When, therefore, by legislation of a state, constructive service of process by publication is substituted in place of personal citation, and the court upon such service is authorized to proceed against the person of an absent party, not a citizen of the state nor found within it, every principle of justice exacts a strict literal compliance with the statutory provisions. And such has been the ruling, we believe, of the courts of every state in the Union. It has been so held by the Supreme Court of California in repeated instances."

In Earle v. McVeigh, supra, the same high authority declared:

"Doubtless constructive notice may be sufficient in certain cases, but it can only be admitted in cases coming fairly within the provisions of the statute authorizing courts to make orders for publication, and providing that the publication, when made, shall authorize the court to decide the decree."

In Woolridge v. McKenna, supra, at page 680 of 8 Fed., the rule of strict construction is announced as follows:

"These provisions for substituted process are not favored, and are nowhere more strictly construed than by the federal courts."

In Batt v. Procter, supra, at page 517 of 45 Fed., the court said:

"Ordinarily in the adjudication of causes courts have before them all parties, either personally or through their representatives, whose interests are to be directly affected by the litigation; and the dictates of justice, equally the policy of the law, requires their presence whenever it is practicable to obtain it. Statutes therefore, which confer the power to proceed to an ex parte hearing in the absence of personal service, as the present one does under certain circumstances, should not be construed with any degree of liberality in favor of him who seeks the exceptional mode of service."

Applying the foregoing principles, and others which can be more conveniently noted later on, my conclusions are:

First. The bill, so far as it seeks an accounting, injunction, and receiver, affords no ground for substituted service, since, in these respects, it is a proceeding in personam and not in rem. Ellis v. Reynolds (C. C.) 35 Fed. 394.

Second. The service cannot be upheld on the theory that the suit is one to subject the property of the Riverside Trust Company, as a trust fund, to the claims of stockholders and creditors, for the reason that the company is not insolvent.

Third. So far as the Northern Counties Investment Trust, Limited, and Waterhouse and Winterbotham are concerned, the bill does not seek to enforce a claim or lien, or to remove an incumbrance or lien or cloud; nor does it contain allegations which would justify such relief, and, moreover, my conclusion, hereinafter announced, as to equity rule 94, applies to the mortgage held by Waterhouse and Winterbotham.

Fourth. There remains for consideration only those parts of the bill concerning the mortgage executed by complainants to Newton and the trust deed and mortgages executed by the trust company to

Crewdson, Fowler, and Harrison. Complainants pray for the cancellation of these instruments, and, if the prayer of the bill was justified by its allegations, there would be a sufficient showing for substituted service. It is manifest, however, from the bill, that the mortgages held by Newton were given to secure an actual loan, still unpaid, of $150,000 made to Matthew Gage, and those held by Crewdson, Fowler, and Harrison also secure valid and outstanding debentures of the trust company. The bill neither offers payment, nor alleges facts to dispense with it, and therefore fails to state a case for cancellation or removal of the liens.

While the conditions of said deed and mortgages are complained of as being oppressive and having been made for a purpose other than securing the indebtedness of the company, there is no charge that the trustees or mortgagees have sought to avail themselves of these conditions or even to enforce the securities, and they cannot do so so long as the trust company fulfills its obligations to the holders of the debentures.

Furthermore, the parties to said trust deed and mortgages, as well as other debenture holders, whose acceptance of said instruments will be presumed, were under no contract with Gage for a change in the directors or policies of the company, and the general allegations of fraud and conspiracy made in the bill are not sufficient grounds for cancellation.

Again, the bill fails to show that complainants have taken any of the steps required by equity rule 94. So far as said trust deed and mortgages are concerned, the bill is simply a stockholder's bill, and the authorities are agreed that such a suit cannot be maintained without strict compliance with said rule. Corbus v. Gold Min. Co., 187 U. S. 455, 23 Sup. Ct. 157, 47 L. Ed. 256; Davis & Fernum Mfg. Co. v. Los Angeles, 189 U. S. 207–220, 23 Sup. Ct. 498, 47 L. Ed. 778; Quincy v. Steele, 120 U. S. 241, 7 Sup. Ct. 520, 30 L. Ed. 624; Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Church v. Citizens' St. R. Co. (C. C.) 78 Fed. 526; Robinson v. W. Va. Loan Co. (C. C.) 90 Fed. 770; Squair v. Lookout Mountain Co., 42 Fed. 729; Macon, D. & S. R. Co. v. Shailer, 141 Fed. 585, 72 C. C. A. 631. A defense under said rule does not deny the alleged grievances of the corporation, but the stockholder's authority to redress them. It does not contest the existence of a cause of action, but complainants' right to sue for its enforcement. Without complying with this rule, a stockholder can no more maintain a bill founded upon rights which may properly be asserted by the corporation, than an entire stranger to the corporation and its property.

The availability of said defense against an order for substituted service is well illustrated in defendants' brief filed June 13, 1906, at pages 45 and 46, as follows:

"If complainants here should set forth in the bill that defendant Newton had a mortgage upon the Tajo Building in the city of Los Angeles, that the mortgage was obtained by fraud, or that the consideration had wholly failed, and should pray to have the mortgage canceled, nothing what ever appearing in the bill to show that either of the complainants had any interest whatever in the Tajo Building, or in the mortgage, is it possible that a court of equity would compel defendant Newton to defend such an action, brought by a

stranger to the property or the security, or else submit to a decree pro confesso, rendered upon substituted service and decreeing his mortgage void?

"If complainants here had brought suit against defendants Crewdson, Fowler, and Harrison, alleging that said defendants held a mortgage upon the property of the Southern Pacific Railroad Company in California, without alleging or showing that complainants or either of them were stockholders or had any interest in that company, or in the mortgage, and the bill should allege that the mortgage was obtained by fraud, or that the consideration had wholly failed, is it possible that a court of equity could compel defendants Crewdson, Fowler, and Harrison to defend the suit brought by strangers to the property or the security, or to enter a general appearance therein, or submit to a decree rendered upon substituted service, declaring their mortgage void?"

The failure, in the case at bar, to comply with equity rule 94, considering the failure merely as a defense on the merits, which would render the bill obnoxious to general demurrer, is, under the rule I have already announced, fatal to the order for substituted service. I am of opinion, however, for the reasons below stated, that, in the present case, the failure to comply with equity rule 94 not only affects the merits, but determines the proper alignment of the parties, and thus indirectly goes to the question of federal jurisdiction.

Where there are several plaintiffs and defendants, all necessary parties on one side must be citizens of a state, and all on the other side must be citizens of another state or foreign country. Tracy v. Morel (C. C.) 88 Fed. 101; Merchants' Cotton Press Co. v. N. A. Ins. Co., 151 U. S. 368–386, 14 Sup. Ct. 367, 38 L. Ed. 195; Con. Water Co. v. Babcock (C. C.) 76 Fed. 243–248. The federal courts are without jurisdiction of a suit between aliens where no federal question is involved. Pooley v. Luco et al. (C. C.) 72 Fed. 561.

In determining the question of federal jurisdiction, where it depends solely upon diverse citizenship, it is the duty of the court to arrange the parties on the one side or the other according to their interests and the facts, regardless of the places they occupy in the pleadings as plaintiffs or defendants. Cilley v. Patten (C. C.) 62 Fed. 498; Board of Trustees v. Blair (C. C.) 70 Fed. 414–417; Consolidated Water Co. v. Babcock, supra; Reavis v. Reavis (C. C.) 98 Fed. 145–147; Elkins v. Chicago (C. C.) 119 Fed. 957; Boatman's Bank v. Fritzlen, 135 Fed. 650–658, 68 C. C. A. 288.

In a stockholders' suit to remove an alleged fraudulent lien from the corporate property, where equity rule 94 has not been complied with, the corporation will be placed on the side of the complainant. This alignment results from the facts that the interests of the complainants and the corporation are obviously the same, and, as the corporation can be placed in a hostile attitude to the complainants only by a compliance on their part with equity rule 94, the corporation is not shown to be inimical to their case. Elkins v. Chicago, supra; Groel v. United Electric Co. (C. C.) 132 Fed. 252. Adopting, in the case at bar, this principle of alignment, and placing the Riverside Trust Company, Limited, on the side of the complainants, the suit is one between aliens, and not of federal cognizance. Pooley v. Luco et al., supra.

Illinois Central Ry. Co. v. Adams, 180 U. S. 28, 21 Sup. Ct. 251, 45 L. Ed. 410, cited in plaintiffs' brief, filed December 1, 1906, does

not antagonize such an alignment. In the first place, the case was not a stockholders' suit. At page 33 of 18 U. S., page 253 of 21 Sup. Ct. (45 L. Ed. 410), the court says:

"Plaintiff is averred to be a citizen of Illinois, and all the defendants citizens of Mississippi; but it further appears that the Illinois Central Company claims the right to bring the bill upon the ground that it is the lessee of the property and a creditor and a mortgage bondholder of the Canton, Aberdeen & Nashville Railroad Company, whose property is sought to be taxed."

In the next place, the fact that the plaintiff was a stockholder in the Canton, Aberdeen & Nashville Company did not appear until it was set up in the affidavit of one of the defendants, Wirt Adams, filed in the Supreme Court after the case had been there docketed.

Furthermore, a careful reading of said case shows that the question of arranging the parties according to their interests and the facts, differently from their places in the pleadings, was not in the mind of the court, but diverse citizenship as it appeared from the designations of the parties in the complaint was assumed, and it was on this assumption that the court declared that a defense under equity rule 94 did not go to the jurisdiction, but only to the merits. That diverse citizenship was accepted by the court as an undisputed fact is conclusively shown by the following extract from the court's opinion, underscoring mine:

"Assuming, under the affidavit of Adams, though made only upon information and belief, that the plaintiff, the Illinois Central, owns a majority of the stock of the Canton Company, we are still of the opinion that the defense set up under the ninety-fourth rule does not raise a question of jurisdiction, but of the authority of the plaintiff to maintain the bill. Jurisdiction is the right to put the wheels of justice in motion and to proceed to the final determination of a cause upon the pleadings and evidence. It exists in the Circuit Courts of the United States under the express terms of Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], *if the plaintiff be a citizen of one state, the defendant a citizen of another,* if the amount in controversy exceed $2,000, and the defendant be properly served with process within the district. Excepting certain quasi jurisdictional facts, necessary to be averred in particular cases, and immaterial here, these are the only facts required to vest jurisdiction of the controversy in Circuit Courts."

Had the question of aligning the parties according to their interests and the facts been called to the attention of the Supreme Court, undoubtedly the Canton, Aberdeen & Nashville Company would have been aligned with the plaintiff, because the interests of the two companies were identical, and the Canton, Aberdeen & Nashville Company must have been in sympathy with plaintiff's case, because, as shown by the affidavit of Adams, which is the basis of the court's discussion of equity rule 94, plaintiff owned a majority of the stock of the Canton, Aberdeen & Nashville Company.

It must be borne in mind here that, in cases involving a federal question, or where diverse citizenship exists, no matter how the parties be aligned, failure to comply with equity rule 94 goes only to the merits, and that it can affect the question of federal jurisdiction only where a jurisdictional arrangement of the parties is required. For instance, if, in the case of Illinois Central Ry. Co. v. Adams, now under review, the Canton, Aberdeen & Nashville Company had been a Tennessee corporation, federal jurisdiction would have existed

no matter on which side said corporation might be placed, and failure to comply with equity rule 94 would not have raised any question of jurisdiction, but simply have gone to the merits; and since, as I have already shown, the fact that an alignment of the parties different from that made in the bill would defeat the claim of diverse citizenship was never considered by nor called to the attention of the court, its discussion of equity rule 94 must be confined to cases where diverse citizenship exists no matter how the parties are arranged, as above illustrated, or where the controversy involves a federal question, as in case No. 79, decided at the same time with Illinois Central Railroad Company v. Adams, 180 U. S. 29, and last paragraph of opinion, at page 41, 21 Sup. Ct. 251, at page 256 (45 L. Ed. 410).

The stipulation of March 3, 1906, signed by complainants' attorneys, extending until the 2d day of April, 1906, the time for the Northern Counties Investment Trust, Limited, to file its appearance, cannot be considered a general appearance. So far from being an appearance, said stipulation expressly extends the time for that purpose, and it is not an unfair inference that said stipulation was given in order to afford said defendant further opportunity to enter its special appearance. This view is fully confirmed by the subsequent order of the court of March 29, 1906, extending the time of appearance until the decision of the court upon the motion now under consideration to vacate the order for substituted service.

Under section 5 of the Act of March 3, 1875, it is the duty of the court, whenever satisfied that it is without jurisdiction of a suit, to dismiss or remand the same on its own motion. Mansfield, C. & L. M. R. Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462; McCormick v. McDonald (C. C.) 110 Fed. 50; Barth v. Coler, 60 Fed. 466, 9 C. C. A. 81; U. S. v. Crawford (C. C.) 47 Fed. 561; Williams v. Notawa, 104 U. S. 209, 26 L. Ed. 719.

The motions to vacate order of service are allowed, and, unless complainants desire leave to amend, the suit will be dismissed for want of jurisdiction, and without prejudice.