# CERECEDO ET AL

## *v.*

# SALAZAR ET AL.

San Juan, Equity, Nos. 1040 and 1041.

JURISDICTION AS TO ALIENS.

Federal Practice—Aliens.

>    While on the mainland a district court may not have jurisdiction of aliens, this is conferred upon the Porto Rico Federal Court by the Jones Act.

Opinion filed January 29, 1920.

*Mr. Henry G. Molina* for plaintiffs.

*Mr. E. B. Wilcox* for demurrer.

HAMILTON, Judge, delivered the following opinion:

These cases are on somewhat similar claims and are between similar parties. The demurrer raises several questions as to the jurisdiction of this court over persons, of which the questions as to aliens are important. They can best be decided in the light of the different acts conferring jurisdiction upon this court.

This court was originally instituted by military order, General Order No. 88, dated June 27, 1899. Laws, Ordinances,

XI. Porto Rico.—32.

Cerecedo v. Salazar.

etc., Effective in Porto Rico May 1, 1900, page 2215. The power of that provisional court was extended "to all cases which would be properly cognizable by the circuit or district courts of the United States under the Constitution," and "the judges of the provisional court shall be clothed with the powers vested in the judges of the circuit or district courts of the United States." In civil cases the jurisdiction existed when the amount of controversy was $50, and where the action was "by or against foreigners or by or against citizens of another state, district, or territory of the United States residing in" Porto Rico. The business and records of the provisional court were by the Foraker Act of May 12, 1900, turned over to the district court of the United States for Porto Rico, created by that act, which in § 34 was given, "in addition to the ordinary jurisdiction of the district courts of the United States, jurisdiction of all cases cognizable in the circuit courts of the United States."

Porto Rico being an American insular possession some 1,200 miles away from the mainland of the United States, and inhabited by at least 5,000 Spaniards, remaining after the Treaty of Paris, as well as by English, French, and Italians, more numerous in proportion than the mainland of the United States and than most districts of the United States, it was found that the usefulness of the court was cut short by being limited to jurisdiction between citizens of different states or between citizens of a state and a foreign state. This did not permit a suit between foreign citizens (King v. Cornell, 106 U. S. 395, 27 L. ed. 60, 1 Sup. Ct. Rep. 313; Gage v. Riverside Trust Co. 156 Fed. 1007; Foster, Fed. Pr. 5th ed. § 45), nor between a Porto Rican and a foreign citizen, which from the conditions prevailing in the district must constitute a very large part of the litiga-

Cerecedo .v. Salazar.

tion of the courts. Accordingly the law was amended as to Porto Rico by the Act of March 2, 1901, which provided "that the jurisdiction of the district court of the United States for Porto Rico in civil cases shall, in addition to that conferred . . . extend to and embrace controversies where the parties or either of them are citizens of the United States, or citizens or subjects of a foreign state or states, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of $1,000." 31 Stat. at L. 953, chap. 812, Comp. Stat. § 3786, 7 Fed. Stat. Anno. 2d ed. p. 1280. This act, therefore, provided that if the plaintiff or defendant were a foreigner the suit would lie, provided the value in controversy amounted to $1,000. If the case at bar had been brought under the Foraker Act the court would have had jurisdiction.

The Jones Act of March 2, 1917, 39 Stat. at L. 951, chap. 145, Comp. Stat. § 3803qq, Fed. Stat. Anno. Supp. 1918, p. 626, had principally political objects in view, and the jurisdiction of this court was changed only so far as was necessary to secure those ends. There had been much opposition to the court's having jurisdiction where either party was an American citizen, and, as the new act made practically all Porto Ricans Americans also, it was necessary to change the provision, unless the court was to have co-ordinate jurisdiction with the local courts in all large suits. The new act, therefore, provided in § 41 that the district court should have "jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign state or states, or citizens of a state, territory or district of the United States not domiciled in Porto Rico, wherein the matter in dispute exceeds, exclusive of interest or cost, the sum or value of $3,000, and of

all controversies in which there is a separable controversy involving such jurisdictional amount, and in which all of the parties on either side of such separable controversy are citizens or subjects of the character aforesaid. . . ." Besides raising the jurisdictional amount to $3,000, the effect of the new act was to restrict the jurisdiction to cases where all parties on one side were Americans or aliens, but to grant jurisdiction where some of the parties on either side in such a suit were of this character and had an interest which could be separated from that of the others who were without the jurisdiction of the court.

In the case at bar the plaintiffs are all Spaniards and the jurisdictional value is over $3,000. It would seem that the suit, therefore, falls within the provisions of the Jones Act. This court has a broader jurisdiction as to persons than that of other district courts of the United States. Other district courts are limited, as to persons, to controversies between citizens of different states, while the point as regards this court is not the difference of state citizenship, but the difference of residence as between the mainland and Porto Rico itself. Moreover, while the district courts on the mainland have no jurisdiction in controversies between aliens, this court has, "where all the parties on either side of the controversy are aliens." If all the parties on both sides are aliens the court would have jurisdiction; for in such case it would certainly be true that all the parties on either side were aliens, whichever side one chose to take into account. In other words, the phraseology shows that "either side" must be construed as meaning either or both sides. Ortega v. Lara, 202 U. S. 339, 50 L. ed. 1055, 26 Sup. Ct. Rep. 707, is still controlling.

In the same way, remembering the evils to be remedied in the

Cerecedo v. Salazar.

case of this outlying possession of the United States, it would be too strict a construction to hold that the present plaintiff might sue a Spaniard, or the present plaintiff might sue a resi-. dent American, but that in a case where he has a joint claim against both Spaniards and resident Americans he could not join them. It would seem to be a reductio ad absurdum to hold that the court has jurisdiction where they are sued separately, and yet has no jurisdiction where they should be sued together. Not only would there be nothing gained by the discrimination; but there would be a hiatus which would frequently occur. The court will not adopt a construction bringing about such a result.

The other points raised can be better handled upon the trial of the facts.

The demurrer is overruled, and it is so ordered.