## DETROIT *v.* DEAN.

A stockholder of a corporation, in order to protect its rights and property against the threatened action of a third party, filed his bill against the latter and the corporation, alleging, *inter alia,* that the directors, although thereunto requested, had neglected and refused to institute proceedings. *Held,* that he must show a clear case of such absolute and unjustifiable neglect and refusal of the directors to act as would lead to his irreparable injury, should he not be permitted to bring the suit. *Hawes* v. *Oakland,* 104 U. S. 450, cited upon this point and approved.

APPEAL from the Circuit Court of the United States for the Eastern District of Michigan.

The facts are stated in the opinion of the court.

*Mr. Henry M. Duffield* for the appellant.

*Mr. George Ticknor Curtis, Mr. Edward N. Dickerson,* and *Mr. E. W. Meddaugh* for the appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

In December, 1871, the Mutual Gas-Light Company of Detroit was created a corporation under a general law of Michigan, for the purpose of manufacturing, selling, and furnishing gas for consumption in Detroit. The proposed corporators had previously made application to the common council to authorize the corporation, when formed, to lay gas-pipes, mains, conductors, and service-pipes in the avenues, streets, lanes, highways, alleys, public parks, and squares throughout the city; and obtained the passage of an ordinance granting permission to the company to lay the pipes, subject, however, to certain conditions. Power was conferred by law upon the city authorities to grant the permission "upon such reasonable regulations as they might prescribe;" and they provided that the permission should cease if the company should, at any time, combine with any other company concerning rates to be charged for gas either to the city or to private consumers; and that the company should not sell its property, franchises, or privileges to any other gas-light company, under the penalty of a forfeiture of its works to the city. The company accepted the terms of the ordinance; erected its manufacturing works in the township of Hamtranck, just beyond the boundary of the city; laid mains and service-pipes in the streets, and in November, 1872, commenced distributing and supplying gas to private consumers and to the city, and continued to do so up to the time this suit was commenced.

During this period, and previously, another corporation, known as The Detroit Gas-Light Company, was in existence, and was also supplying gas to private consumers and the city. In June, 1877, the two companies entered into an agreement to divide the city between them, one to take the part lying easterly of the middle of Woodward Avenue, and the other the part lying westerly of it, each to transfer to the other its property situated in the portion of the other, and each stipulating not to lay mains or to supply gas in the portion of the other,

reserving, however, the right to fulfil all obligations resting upon it with respect to any portion of the city. The difference in the value of the property exchanged was $140,000 in favor of the old company, and this sum the new company agreed to pay.

The common council, deeming this division of the city, and other things done or omitted by the company, to constitute a breach of the conditions upon which permission to lay its pipes in the streets had been granted, passed, on the 14th of December, 1877, an ordinance repealing the previous one, reciting as reasons for it that the company had not built its gas-works in the city of Detroit, but in the township of Ham-tranck; that it had entered into an agreement with the De-troit Gas-Light Company to divide the territory of Detroit between them for the supply of gas; and that it had refused to lay mains in streets on petition of owners or occupants of buildings for a supply of gas.

The repealing ordinance declared that the company had thus forfeited its gas-pipes, mains, conductors, and service-pipes lying within the avenues, streets, lanes, highways, alleys, pub-lic parks, and squares of the city, and all other property situ-ated within its limits; and that the title to the whole had vested in the city of Detroit. It therefore directed the comp-troller to assume possession and control of the same and to serve a copy of the ordinance upon the company. To restrain the enforcement of this ordinance and protect the rights and property of the company the present suit was commenced by the complainant, a citizen of New York. The company had expended large sums of money in the construction of its works, and created for that purpose a debt, represented by bonds secured by mortgage upon its property, which, with interest, amounted to $650,000. There was, therefore, an urgent necessity for legal proceedings to stop the seizure of the property. There were only three directors of the com-pany, two of them residents of Detroit and one of New York; and as the company could not maintain a suit in the Federal court against the city, they devised such a case of refusal on their part to take the necessary legal proceed-ings to protect the property and rights of the company as to

give jurisdiction to the Federal court of a suit brought for that purpose by the non-resident director and stockholder. The three directors discussed the matter among themselves. The president represents himself to have been very belligerent in his disposition. According to his statement, he professed not to want any legal proceedings taken. He proposed to settle the matter by force, and if any man attempted to take the property, to shoot him on the spot. His feelings on the subject must have been very intense, for more than two months afterwards he testified under oath that he would "most assuredly" have shot any man who meddled with him "as quick as wink;" as quick as he would have shot a burglar in his house at midnight. Dean, the complainant, another director, favored more pacific methods; he desired legal proceedings to be instituted. The third director, Meddaugh, was similarly disposed. He was a member of the bar of Michigan, and acting as one of the attorneys of the company. He favored legal proceedings, but expressed a want of confidence in the local tribunals of the State by reason of the then excited condition of the public mind; he desired to get into the Federal court, and so he resolved to object to a suit in the State courts. A meeting of the directors was thereupon improvised in his office to carry out the course resolved upon. Dean then asked that the officers of the company be instructed to protect its property and rights from the execution of the threat contained in the repealing ordinance of the city, and for that purpose to bring suit in the proper court. The matter being discussed, it was resolved, " That the company, convinced of the improbability of obtaining redress or justice in the local courts, which would be its only recourse, in the present excited condition of the public mind — the press of the city having, for some time past, continually aggravated public feeling by exaggeration and falsehood — cannot prudently enter into a litigation with the city, and that no such attempt on its part would now be made." Dean voted against the resolution, the other two directors in favor of it. The resolution having passed, Dean, on the following day, commenced the present suit, alleging the refusal of the directors to institute proceedings in the name of the company. The bill was read in the presence of the three

directors, and one of them, Meddaugh, acted as a solicitor in the case.

It is impossible to read the testimony of the president contained in the record, with his hesitating and evasive answers to the interrogatories of counsel, and not be convinced that the refusal, which constituted the basis of the present suit, was made for the express purpose of enabling a suit to be brought in the Federal court, and that no such refusal would have been given if that result had not been desired. It was an attempt to get into the Federal court upon a pretence, that justice was impossible in the State courts, owing to the excited condition of the public mind. The only party who could seek redress in a Federal court, by reason of his citizenship, was willing to trust the local courts; and if a determination had not existed to force the controversy away from them, we have no doubt that the other directors would readily have agreed with him. The refusal to take legal proceedings in the local courts was a mere contrivance, a pretence, the result of a collusive arrangement to create for one of the directors a fictitious ground for Federal jurisdiction. The case comes, therefore, within the purview, if not the letter, of the provisions of sect. 5 of the act of March 3, 1875, c. 137, defining the jurisdiction of the Circuit Courts of the United States. That section declares: " That if, in any suit commenced in a Circuit Court or removed from a State court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require."

A single stockholder in a corporation has undoubtedly the same right to institute legal proceedings against the corporation for the protection of his individual rights that a third party, not a stockholder, possesses; but when he resorts to such pro-

ceedings, to protect, not simply such interests, but the property and rights of the corporation against the action or threatened action of third parties, thus assuming duties properly devolving upon its directors, he must show a clear breach of duty on their part in neglecting or refusing to act in the matter, amounting to such grossly culpable conduct as would lead to irremediable loss to him if he were not permitted to bring the matter before the courts. And such neglect and refusal must not be simulated, but real and persisted in, after earnest efforts to overcome it. The opinion in the case of *Hawes* v. *Oakland* is full of instruction on this head, and to it we refer for a statement of the law; we can add nothing to its cogent reasoning. 104 U. S. 450.

The decree of the court below must be reversed, and the case remanded with directions to dismiss the bill, without prejudice to a suit in the State courts; and it is

*So ordered.*