McHENRY and others *v.* NEW YORK, P. & O. R. Co. and another.

*(Circuit Court, N. D. Ohio, E. D.    October 18, 1884.)*

1. CORPORATION—ACTION BY STOCKHOLDERS—RULE 94.

   A bill by stockholders to set aside a lease made by a railroad corporation, that avers that before their bill they applied to and requested said corporation to take such action as would lead to the annulling of said lease, and stated the grounds on which such lease was claimed to be void, especially alleging the invalidity of the lease for the want of approval of the shareholders, and that they were advised by the officers of the corporation that no action could be taken in the premises with a view to such result, and the company wholly refused and neglected to take action for such purpose, or to recognize complainants as having any right to interfere in the matter of said leasing, or to call upon the corporation to take any action therein, is not sufficient, under the ninety-fourth rule promulgated by the supreme court.

2. SAME—LEASE—INTEREST OF STOCKHOLDERS.

   If complainants had, by their averments, brought their case within the purview of the ninety-fourth rule, they do not, upon the facts of their case, have any such interest in the subject-matter of litigation as entitles them to maintain this suit to set aside the lease complained of.

In Equity.

*Estep, Dickey & Squire* and *W. W. Boynton,* for complainants, and *Dunning, Edsdll, Hart & Fowler,* of counsel.

*R. P. Ranney* and *Adams & Russell,* for defendants, and *W. W. MacFarland* and *Benj. H. Bristow,* of counsel.

BAXTER, J. The original bill in this case was filed by Albert Thomas Pettifer, James A. Riley, and John Corby. It was demurred to. The complainants, submitting to the demurrer, asked for and obtained leave to amend and make new parties. Pettifer and Riley thereupon voluntarily withdrew from the case, and James McHenry and Andrew Agen were substituted complainants in their stead, and united with their co-complainant, John Corby, in the exhibition of an amended bill. This amended bill has also been demurred to by one

of the defendants, for that, among other causes, the complainants have not, by their averments, brought their case within the requirements of the ninety-fourth rule recently promulgated by the supreme court. This rule was prescribed to enforce the principle enunciated in the cases of *Hawes* v. *Oakland,* 104 U. S. 450, and *Huntington* v. *Palmer,* Id. 482, to-wit, "that before a shareholder is permitted, in his own name, to institute and conduct a litigation which usually belongs to a corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity with his wishes." The rule requires that "every bill brought by one or more stockholders in a corporation against a corporation and other parties, founded on a right which may be asserted by the corporation, must set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors and trustees, and, if necessary, of the shareholders, and the cause of his failure to obtain such action."

The complainants sue as stockholders of the New York, Pennsylvania & Ohio Railroad Company, for themselves and other stockholders, to set aside a lease made by said company of its road and other property to its co-defendant, and aver "that, before filing their bill, they applied to and requested said New York, Pennsylvania & Ohio Railroad Company to take such action against said Erie Company as would lead to the annulling of said lease, and gave to said former company, as the grounds of said action, substantially the grounds herein stated, especially alleging the invalidity of said lease for the want of the approval of the shareholders of either company, and they were advised by the proper officers of said company that no action could be taken in the premises with a view to such result, and that said company wholly refused and neglected to take action for such purpose, or to recognize said complainants as having any right to interfere in the matter of said leasing, or to call upon said company to take any action in relation thereto." These are the only allegations relating to the questions raised by the demurrer. They are substantially like those which the supreme court, in the cases of *Hawes* v. *Oakland* and *Huntington* v. *Palmer,* hereinbefore referred to, and the case of *Detroit* v. *Dean,* 106 U. S. 537, S. C. 1 Sup. Ct. Rep. 560, held to be insufficient for the purpose mentioned. These adjudications are conclusive upon us, and we cannot do otherwise than sustain defendants' demurrer, and dismiss complainants' bill.

We have thus far treated the case as if the complainants had an intrinsic interest in the controversy. But this concession is not sustained by the facts. The railroad, which is the subject of this controversy, formerly belonged to the Atlantic & Great Western Railroad Company. It was incumbered with several mortgages to secure as many series of bonds issued by it; and, being in default in the payment of interest, appropriate proceedings were instituted to foreclose

said securities. Pending the litigation, the bond and shareholders of said company entered into an agreement denominated "a scheme of reorganization" to buy said property when sold, and organize another corporation to succeed to the rights and business of the defaulting company. To this end "reorganization trustees" were designated, and authorized to act for the contracting parties. Their object was to transfer their shares and debts from the old to the new organization, cancel the evidences thereof, and issue corresponding bonds and stock certificates by the new company. And inasmuch as the bond-holders, under this scheme, were to be secured by mortgages upon the new company's property, vesting them with a prior lien thereon over the shareholders, and as the bonds to be so issued greatly exceeded the value of the property to be mortgaged, the contracting parties mutually stipulated that "the administration of the company's affairs should be under the supervision of the bondholders," who should "have full control of the expenditures and policies of the company;" and to effectuate this part of their agreement it was further stipulated that the shares of the new company, instead of being issued, as is usual, directly to the shareholders, should be issued to and voted by trustees to be elected by the bondholders, until the bondholders realized interest on their bonds at the rate of 7 per cent. per annum for three years, when, and not before, the certificates so to be issued to trustees, were to be recalled and canceled, and certificates in lieu thereof issued to the respective shareholders.

Complainants are, therefore, but the equitable owners of the stock claimed by them. Their interest in the corporate property is subordinate to that of the bondholders. In common with other shareholders they will be entitled to whatever shall remain thereof after the prior claims of the bondholders shall be satisfied and discharged. Let us see how much, if anything, will be left for them. The principal bonded debt entitled to priority is $87,500,000; the annual interest thereon is $6,125,000; the past due and unpaid interest exceeds $12,000,000. These sums must all be paid before the stockholders are entitled to anything. Such are the corporate liabilities. What are its resources? Their road, they say, is worth $30,-000,000, and yields an annual net income of $1,750,000,—$4,375,-000 less than the annual interest on its bonded indebtedness. The problem for determination arises on the foregoing facts. How long before property worth $30,000,000, and yielding an annual net income of $1,750,000, will extinguish $100,000,000 of indebtedness, and an additional annual accumulation, by way of interest, of $6,125,000? When, as we have already said, this is done, the complainants' rights attach, and they, in connection with the other shareholders, will be authorized to assert their claims and appropriate the residue of the corporate property. In our opinion, the $14,678,634 of the new company's capital stock owned by the complainants, to protect which they are prosecuting this suit, is not intrinsically worth

the twentieth part of a "pepper-corn." It is probably worth something for speculative purposes; but the courts are under no obligations to aid such enterprises. The defendants' road is in substance and in fact the property of the bondholders, and they ought to be permitted under their contract to manage and control its business. The lease complained of is satisfactory to them, they are the beneficial owners of the corporate property, and the complainants have no such interest therein as entitles them to intervene, and, through this tribunal, wrest the management thereof from the parties who are so clearly vested with the legal right to control it.

Complainants' original and amended bills will therefore be dismissed, with costs.

WELKER, J., concurred in this opinion.