## BOWDOIN COLLEGE et al. v. MERRITT.

### (Circuit Court, N. D. California. July 23, 1894.)

**1. LAW OF THE CASE.**

A decision on demurrer that the allegations of the complaint, including one that defendant trustees refused to sue, gave plaintiff cestui que trust a right of action, is the law of the case on motion to dismiss.

**2. UNITED STATES COURTS—JURISDICTION—COLLUSION.**

Refusal of trustees to sue, thereby enabling the cestui que trust to bring the action in a federal court, as involving a controversy wholly between citizens of different states, will not be *held* collusive, thus subjecting the action to dismissal under Act March 3, 1875, § 5, though they were willing the cestui que trust should bring the action, and were friendly to it, where they would not have sued under any circumstances, for the reason that they would have had to sue in a state court, and thought that an effort would there be made to unduly influence the jury.

**3. SAME—EFFECT OF ANSWER.**

Where, on the refusal of trustees to bring an action against a citizen of the same state, the cestui que trust, a citizen of another state, brings the action in a federal court, joining the trustees as defendants, the answer of the trustees, admitting all the allegations of the bill, including one that they refuse to sue, does not show that they have changed their attitude, and are no longer antagonistic to the complainant, and thus deprive the federal court of jurisdiction of the action, as one no longer between citizens of different states.

Action by the president and trustees of the Bowdoin College, and others, against James P. Merritt, Frederick A. Merritt, and others, to remove a cloud from title. A demurrer to the bill was overruled (54 Fed. 55), and the cause was then heard on application to file a supplemental bill, and for an injunction. Leave was given and a preliminary injunction granted (59 Fed. 6), and defendant J. P. Merritt now moves to dismiss.

Blake, Williams & Harrison, E. S. Pillsbury, and Robert Y. Hayne, for complainants.

H. W. Philbrook, Arthur Rodgers, J. C. Martin, A. A. Moore, and Geo. R. B. Hayes, for respondents.

McKENNA, Circuit Judge (orally). The nature of this action has been heretofore defined by Judge HAWLEY (54 Fed. 55), in passing on the demurrer, as one to quiet title, and the facts have been so often stated that it is unnecessary to state them again.

The action is brought by the college and certain persons as bene-

ficiaries of a trust deed made by one Catherine Garcelon to the defendants Stanley and Purington. The plaintiffs sue, for themselves and all others interested under the deed, to enjoin J. P. Merritt from asserting claim to the property described in the deed, contrary to a contract it is alleged he made with Mrs. Garcelon, and thereby embarrass or prevent the execution of the trust. Bowdoin College is a citizen of Maine, and Stanley and Purington and Merritt are citizens of California. The bill alleges that a demand had been made by the Bowdoin College, of Stanley and Purington, to sue, and that they had refused. The defendant Merritt demurred to the bill, and the demurrer was overruled by Judge HAWLEY, he holding complainants had a right of action. The defendant has since filed a plea in abatement, which, at some length and with emphasis, charges that the action was instituted by Stanley and Purington, and that they were made defendants by false pretense, and that the demand on them to sue, and their refusal, was not in good faith, but that suit might be fraudulently prosecuted in this court, and its jurisdiction imposed on. Hence, it is claimed that the suit is collusive, under section 5 of the act of March 3, 1875.

There is considerable controversy as to the proper interpretation of Judge HAWLEY'S opinion,—whether the right of action in Bowdoin College depended upon the refusal of Stanley and Purington to sue, or was independent of this, and was sustained by its interest in the execution of the trust; the defendant contending for the former, and the complainants for the latter, view. I shall assume that defendant is right, and consider the case from this standpoint. This narrows the controversy, and relieves me from the labor and embarrassment of deciding a number of points made and argued by counsel with learning and ability.

To support the jurisdiction of the court in this case, there must be a controversy between citizens of different states, and it must be conceded that the bill shows and the evidence establishes that the real interests of Bowdoin College and Stanley and Purington are identical; and defendant claims, therefore, that plaintiffs and Stanley and Purington should be arranged on one side as parties against the Merritts on the other, and when so arranged the suit is not wholly between citizens of different states. In Detroit v. Dean, 106 U. S. 537, 1 Sup. Ct. 560, Dean, who was a citizen of New York, and a stockholder in the Mutual Gaslight Company, a Michigan corporation, sued its directors, citizens of Michigan, and the city of Detroit. The court ordered the bill dismissed, not because Dean and the directors had identical interests, but because the refusal of the latter to sue was collusive. Against the seemingly natural inference that, if the refusal had not been collusive, jurisdiction would have been entertained, the defendant urges that the point was not raised, and the case therefore is not authority. But I do not think it reasonable to assume that the point would have escaped the vigilance and ability of the court and counsel in a case where jurisdiction was contested. But this case does not stand alone. It cites Hawes v. Oakland, 104 U. S. 450; and this, again, cites Dodge v. Woolsey, 18 How. 331. See, also, Davenport v. Dows, 18 Wall.

626; Memphis v. Dean, 8 Wall. 73; Taylor v. Holmes, 14 Fed. 507; Swope v. Villard, 61 Fed. 419; Greenwood v. Freight Co., 105 U. S. 16. These cases undoubtedly establish that a controversy may arise between a shareholder of a corporation and its directors, different from the controversy between the shareholder and the other defendants, which it is the object of the suit to settle, and in which the real and material interests of the stockholder and directors are the same. Or, if it may not be said that there are two controversies, it may be said, as was said by Justice Wayne in Dodge v. Woolsey, that the refusal of the directors to sue caused them and the shareholders "to occupy antagonistic grounds in respect to the controversy, which their refusal to sue forced him to take in defense of his rights." Their refusal was a hindrance to his rights. Dodge v. Woolsey was modified by Hawes v. Oakland, as to what circumstances would justify a suit by a shareholder if the directors should refuse to sue; but a question of that kind is not raised by defendants, and probably could not be. Judge HAWLEY decided that the facts stated in the bill, combined with the refusal of the trustees to sue, gave a cause of action to plaintiffs, and this must be observed as the law of the case.

Starting with this as the law, the inquiry is necessarily confined to the character of the refusal,—whether collusive or otherwise; that is, as the plaintiffs' right of action to sue depends upon the re-refusal of Stanley and Purington to sue, the question is, was it sincere,—expressing a real resolution,—or was it feigned to give a cause of action to plaintiffs? I cannot conceive of a more difficult proposition to prove or disprove against the declarations of the parties themselves, if they be credible. The evidence in this case is very voluminous, and has been cited and commented on at great length and ability by counsel. It is impossible to review it. It clearly establishes that Stanley and Purington were willing that plaintiffs should sue,—maybe, urged them to do so; that they are friendly to the action; secured the consent of the other parties to it; advanced trust money to plaintiffs after the suit was commenced, to purchase the interest of one of the Merritts. And a credible witness swears:

"I met the judge [meaning Judge Stanley] on Jackson street, and he walked up to the station,—up to the narrow-gauge station,—and we got to talking about this. In fact, I spoke to him about it. I said, 'I see, Judge, there is a suit brought by Bowdoin College;' and he said, 'Yes, I had that suit brought.' And I said, 'What object could you have in bringing that suit?' He said, 'I had the suit brought so as to prevent them from coming into Alameda, before a jury, to try this case.'"

But this is not inconsistent with the fact firmly sworn to by Stanley, that he and Purington would not have brought suit in the state court, which is made by Judge HAWLEY the condition of plaintiffs' right to sue, and of the jurisdiction of the court. Judge Stanley is a gentleman of high character, and it is not giving too much credence to his statement to believe it, against evidence which, though strong, is not inconsistent with it. Judge Stanley is supported by the testimony of Mr. Young, treasurer of the college. He testifies that at his first interview with Judge Stanley the latter told

him that the trustees would not sue, and repeated it at a second interview, and testifies further, in effect, that there was no collusion between the college and Stanley. If Judge Stanley believed what he says he did, his position is not unnatural,—if he believed, as he testifies he believed, that a syndicate had been formed to defeat the trust, which would have power to influence a jury in the state court, and that to sue in the state courts would be, as he forcibly put it, "like putting his head between a lion's jaws," and that, therefore, he would wait, and make the best defense to any attack that should be made· But defendant insists he had no ground for his belief, or, at any rate, none appears but his statement. An issue on this would be fruitless. It could not be so conclusively established as to disprove his belief. If so, it would seem to prove too much, and would leave him without motive, or that motive at least to collude for a suit in the federal court. The record shows no other motive, except his declaration that he would not assume the chance of paying the expense of the suit out of his own pocket, as he might have to do under a decision of the supreme court of the state to the effect that an executor could not spend any part of the estate to support his testator's will. This also is denied by defendant, but, if the denial can be supported, Stanley then is left without motive to seek a federal court.

Defendant, however, contends that, if the plaintiff and Stanley and Purington were antagonistic when the suit was brought, the answer of the latter shows that there is now no controversy between them and plaintiffs. The answer admits the allegations of the bill, except as to the possession of one piece of land. In support of their contention, counsel cite Railroad Co. v. Ketchum, 101 U. S. 289. In this case the Pacific Railroad, a Missouri corporation, mortgaged its road and other property to Henry F. Vail and James D. Fish, trustees, citizens of New York, to secure a proposed issue of bonds amounting to about $4,000,000. It was a third mortgage, the property being covered by other mortgages, and contained clauses providing for foreclosure if interest should not be paid. Default was made in the payment of one of the installments of interest, and Ketchum, a citizen of New York, commenced suit, claiming to be the owner and holder of many of the bonds, in behalf of himself and other bondholders. Vail and Fish and the holders of the prior mortgages were made defendants. The latter may be omitted from consideration. As to Vail and Fish the bill alleged that:

"Your orator further shows unto your honors that an application has been made by your orator, on behalf of himself and other holders of bonds secured by said mortgage, to the defendants Henry F. Vail and Henry D. Fish, to take proceedings to foreclose the aforesaid mortgage, and to protect the interest of your orator and such other holders, but that no such proceedings have been taken, and, as your orator is informed and believes, some doubt is expressed whether, under such mortgage, they have the right to institute such proceedings, or any proceedings thereunder, by reason of the nonpayment of the interest due November 1, 1875, and for such reason prefer not to take such proceedings; and your orator, being apprehensive that his interest, and the interests of other holders of like bonds, may be seriously affected by delay in the institution of proceedings to foreclose said mortgage and to obtain possession of said property, has brought this action in his own behalf,

and on behalf of all others similarly situated, and holding like bonds secured by said third mortgage, and has made said Vail and Fish parties defendant herein."

Vail and Fish answered, admitting the allegations of the bill, and concluded as follows:

"And these defendants, as trustees of the several and varied interests of the bondholders secured by said deed of trust, submit the same to the judgment of this honorable court, that the same may be duly provided for and protected, and ask that they may have such relief, including an allowance for the costs and expenses herein, as to your honorable court may seem meet."

It was objected that as Vail and Fish, and certain other defendants, were citizens of the same state with Ketchum, the suit was not between citizens of different states, and therefore not within the jurisdiction of the circuit court. Answering the objection, the court said:

"For the purposes of this appeal, we need not inquire when the circuit court first got jurisdiction of this suit. It is sufficient if it had jurisdiction when the decree appealed from was rendered."

Then, after considering the relation of other parties to the suit, the court further said:

"This leaves only to consider the position occupied by Vail and Fish. When the suit was begun, as well as when the decree was rendered, they were trustees of the mortgage under which Ketchum and his co-complainants claimed. No allegations were made against them. All that was said about them was that they doubted their right to proceed. There was no antagonism between them and Ketchum and his associates. He wanted them to proceed. They did not know that they had the legal right to do so. In the meantime he, thinking his own rights, as well as those of his associate bondholders, would be injuriously affected by delay, commenced the suit to get done just what the trustees, if they had been willing to proceed, might have done. Whatever he did was for the trustees, and in their behalf, and he really had no power to do more than they might have done if they had been so inclined. It is needless to inquire what might have been the result if they had seen fit to dispute the right of the complainant bondholders to go on. They did not do so, but, on the contrary, before the decree was rendered, came in, and substantially availed themselves of the suit which had been begun, so that in the end the suit, in legal effect, became their suit. Although nominally defendants, according to the pleadings, they voluntarily, in the course of the proceedings, arranged themselves on the same side of the subject-matter of the action with the complainants. This they had the legal right to do. After that, clearly, the controversy was between citizens of one or more states on one side, and citizens of other states on the other side; and when the decree was rendered the only thing to be done was to foreclose the mortgage sued on, as between the trustees of the mortgage, acting with their beneficiaries and the railroad. Of such a suit the circuit court had jurisdiction, and its decree is consequently binding on the parties until set aside in the regular course of judicial proceedings."

It will be observed that the court said there was no antagonism between Ketchum and his associates and Vail and Fish. They had not refused to sue. They had only doubted their right to proceed. The case, therefore, is not like the one at bar. In the case at bar the allegation of the bill is that Stanley and Purington refused to sue, and their answer admits it. The answer does not show that their attitude or resolution had or has changed. I do not think that the plea in abatement is sustained by the evidence, and it is therefore overruled, and the motion to dismiss is denied.

This case was considered by myself in conjunction with Judge HAWLEY, and I am authorized by him to say he concurs in this ruling.