ELKINS v. CITY OF CHICAGO et al. (two cases).

(Circuit Court, N. D. Illinois, N. D.    May 8, 1902.)

1. FEDERAL COURTS — JURISDICTION — DIVERSITY OF CITIZENSHIP — SUIT BY STOCKHOLDER.

In a bill filed in a federal court by a stockholder to enforce rights which may properly be asserted by the corporation, allegations which do no more than to show a formal demand on the board of directors to bring the suit, and a formal refusal, with a further general allegation that the suit is not a collusive one to confer jurisdiction, are not a sufficient compliance with equity rule 94; and the court is without jurisdiction on the ground of diversity of citizenship where the corporation which is made a defendant is, for jurisdictional purposes, a citizen of the same state as the other defendants.

2. SAME — FEDERAL QUESTION — THREATENED LEGISLATION IMPAIRING CONTRACT.

Under the settled doctrine that the courts can only deal with the question of the constitutionality of a legislative act after it has been passed, and are without jurisdiction to interfere with proposed or pending legislation, either state or municipal, the action of a city council in adopting the report of a committee finding that the franchise of a street railway company will expire at a certain time, contrary to the contention of the company, and recommending that the council take measures to dispossess the company at the expiration of such time unless there is a previous renewal, does not give a federal court jurisdiction of a suit to determine the controversy between the company and the city in respect to the term of the grant, on the ground that it presents a constitutional question as to the impairment of the contract rights of the company.

3. EQUITY — AMENDMENT OF BILL.

A city ordinance requiring a street railroad company to give transfers from one to another of two railway systems, both of which it operated as lessee, does not give any right of action against the city in favor of a stockholder of one of the lessor companies, where it does not appear that such company has any interest in the receipts of the lessee, and an amendment setting up such ordinance is not germane to a bill by the stockholder based upon an alleged impairment by the city of the contract rights of the lessor company under its franchise.

In Equity.    On demurrer to bill for want of jurisdiction.

Henry Crawford, John S. Miller, and W. R. Crawford, for complainant.

Charles M. Walker and Shope, Mathis, Zane & Weber, for defendant city.

John A. Rose, for defendant railroad companies.

SEAMAN, District Judge.    The complainant has filed two bills, as stockholder,—one for his interest in the Chicago West Division Railway Company, and the other for his interest in North Chicago City Railway Company,—against the city of Chicago and the companies, respectively, and their respective lessees, as defendants; and each bill alleges a controversy concerning the duration of the charters and property rights of such companies in the operation of their sys-

¶ 1. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

¶ 2. Jurisdiction in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.

tems of street railways in Chicago. The subject-matter is plainly of equitable cognizance, and an early determination of the controversy by a court of competent jurisdiction is of the utmost importance for all interests, public and private. That the state courts have ample jurisdiction for all the purposes of the bill is unquestioned, but the complainant is nevertheless entitled to the exercise of concurrent power vested in this court for an adjudication of the controversy, if brought within the limitations of federal jurisdiction. The demurrer challenges the sufficiency of the allegations of the bill to that end, and thus the only question to be considered is whether the case is presented within either of the grounds of federal cognizance: (1) On the requisite diverse citizenship of parties; or (2) as a case arising under the constitution of the United States,—testing the allegations in each view by the well-recognized presumptions against jurisdiction and against the pleader.

1. Diverse citizenship of the parties appears as they are arranged by the bill,—the complainant being a citizen of Pennsylvania, while each of the defendants is an Illinois corporation,—but such an arrangement is not controlling for the present inquiry, in any aspect of the case. It is the duty of the court, for jurisdictional purposes, to ascertain the necessary parties to the suit, and align them upon the one side or the other in conformity with their true interests and attitude, irrespective of their designations in the bill. So considered, the interests of the complainant, as stockholder of the charter corporation, and of the corporation itself, are entirely identical, and, aside from any question as to the interests of the lessee or operating corporations named as defendants, such status is a bar to jurisdiction based alone on diversity of citizenship, unless compliance with equity rule 94 appears in the allegations of the bill, and saves the case from the general doctrine of alignment of parties. The complainant sues, in the capacity of stockholder, to enforce "rights which may properly be asserted by the corporation," and the action is governed by equity rule 94, which was adopted by the supreme court in 1881 to give effect to the principles declared in Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827, in like case. The doctrine is well recognized that a stockholder in a corporation is entitled to relief in equity for the preservation of his interests against illegal or fraudulent management or action on the part of the corporation, and that such relief may extend as well to the protection of "the property and rights of the corporation against the action or threatened action of third parties" arising out of such conduct of the corporation. City of Detroit v. Dean, 106 U. S. 537, 541, 1 Sup. Ct. 560, 27 L. Ed. 300; Hawes v. Oakland, supra, and cases reviewed. But the incidental right to have the relief so extend over third parties cannot serve alone to invoke federal jurisdiction through the noncitizenship of the stockholder complainant, as the wholesome rule for the alignment of parties would then arise to determine the jurisdiction. Whether a case brought strictly within rule 94 avoids an alignment for that purpose of the corporation refusing to institute a suit with the complainant, suing as an injured stockholder, is a question not involved in the present inquiry, unless the complainant has met the requirements of such rule; and

the sufficiency of his allegations in that regard remains to be considered. Respecting the alleged controversies between the street railway companies and the municipal authorities, it may be assumed, for this point, that its nature would authorize suit on behalf of stockholders for its settlement in the event of refusal on the part of the corporation to bring the action, on the general principles of equity. Vide Dodge v. Woolsey, 18 How. 331, 15 L. Ed. 401. But equity rule 94 imposes further conditions upon the stockholder to maintain such action in the federal court. By way of compliance with these conditions, the allegations are that the complainant is a stockholder,—the period of such interest not stated,—and, as such, "made demand of the board of directors of said corporation" to institute legal proceedings to the end sought by the bill, and that they notified him that the company "declines and refuses to comply with such demand," or to bring suit to establish title or protect the franchises, "and leaves complainant to take such action as he may be advised"; and it is further averred that "this suit is not a collusive one to confer on this court jurisdiction of a case of which it would not otherwise have cognizance." These mere general averments are plainly evasive and insufficient for the purposes indicated by the rule, and in no sense meet the requirements pointed out in the decisions thereunder. Hawes v. Oakland, supra; Huntingdon v. Palmer, 104 U. S. 482, 26 L. Ed. 833; Greenwood v. Railroad Co., 105 U. S. 13, 26 L. Ed. 961; City of Detroit v. Dean, 106 U. S. 537, 1 Sup. Ct. 560, 27 L. Ed. 300; City of Quincy v. Steel, 120 U. S. 241, 7 Sup. Ct. 520, 30 L. Ed. 624. The "earnest and persistent efforts" on the part of the stockholder to induce action by the directors, and "an honest effort to obtain action by the stockholders as a body" to bring about such result, "if time permits or has permitted," are not "made apparent to the court," as required by the authorities cited; and the utmost effect of the allegations is to show a formal demand and a formal refusal, with no circumstances stated to indicate that either demand or refusal were other than perfunctory. The statement that the "suit is not a collusive one to confer jurisdiction" does not meet this objection to the alleged demand and refusal, nor serve to show that either "was not simulated, but real and persisted in." City of Detroit v. Dean, supra. I am of opinion, therefore, that the allegations of the bill do not sustain jurisdiction on the ground of citizenship; and, in this view, the alleged want of verification in conformity with the intention of the rule is not material, if otherwise open to demurrer.

2. Jurisdiction is asserted, however, on the ground that the bills present a federal question, and on the further contention that the ninety-fourth rule is not applicable in such case. Is the case stated by the bill one arising under the constitution of the United States, within the meaning of the jurisdictional provision? The grants set forth are charter and property rights and privileges in the streets of Chicago, conferred upon the companies by the state, both in direct legislative acts and through ordinances of the city, and the duration and other terms of the rights so vested must be ascertained through an interpretation of these grants. Contract or property rights which are thereby vested in the companies cannot be devested without their

consent, and subsequent legislation by the city or state which impairs or takes away such rights violates the constitution of the United States; and a suit which is founded on a violation so alleged is one of which federal courts "have original cognizance, concurrent with the courts of the several states" (25 Stat. 433, c. 866 [U. S. Comp. St. 1901, p. 508] ), as "arising under the constitution and laws of the United States." As remarked in City of Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 382, 22 Sup. Ct. 410, 416, 46 L. Ed. 592:

"The contract once having been made, the power of the city over the subject, so far as altering the rates of fare, or other matters properly involved in and being part of the contract, is suspended for the period of the running of the contract."

The issue of inviolability of the contract, on the one hand, and of impairment or recall, on the other, necessarily depends on an interpretation of both legislative actions, and the fact that it so depends cannot oust the federal jurisdiction. While the state courts possess jurisdiction, in a case before them, to interpret such legislation, and to decide as well whether the United States constitution is thereby violated, their jurisdiction is concurrent only, and not exclusive for either inquiry; and the contention by counsel for the defendant city that it is their exclusive province to construe state legislation is neither supported by the authorities referred to, nor tenable as a test of federal jurisdiction. The cases cited on the argument and in the briefs for and against cognizance of the present case, as one arising under the constitution, cover the various phases in which that question is presented, whether on writs of error to the state courts, or in cases originating in the federal court, or in removal cases; and, while all are instructive, the difficulty in solving the inquiry raised by this bill cannot be met by resting on general definitions and expressions which appear in one or the other of the opinions. The decisions of the supreme court upon the general subject are numerous, and are, of course, controlling when in point. An examination of the long line which appears applicable to the case set forth in the bill fully confirms my impression at the close of the oral argument, namely, that the decisions concur in the view above expressed, and that a case which presents interference on the part of the state, or by the municipality as its delegate, with the vested property or contract rights of the citizen, is within the federal jurisdiction. But the same authorities further concur in upholding the rule of strict construction in such cases, and thereupon that violation of the constitution must appear in legislative impairment of the contract, or in taking property without due process through legislative action; that "jurisdiction cannot be assumed on a mere hypothesis" (City of New Orleans v. Benjamin, 153 U. S. 411, 424, 14 Sup. Ct. 905, 38 L. Ed. 764), and the case must be one "actually and not potentially arising" under the constitution; and finally that jurisdiction cannot be invoked for threatened legislative action, or to interfere in any manner with the adoption of such action by state or city (McChord v. Railway Co., 22 Sup. Ct. 165, 170, 46 L. Ed. 289).

Under the doctrine so established, I am of opinion that the alleged action on the part of the city, however injurious to the interests of

the complainant, is not within the jurisdiction of this court. The strong case averred of charter and contract rights vested in the companies, which stands conceded for the purposes of this hearing, furnishes no ground for federal jurisdiction, in the absence of infringement recognized as such by the federal law. Of the ordinance of 1883, referred to in the argument for complainant as legislative infringement, it is sufficient to remark that it is not so averred in the bill, but appears as a provision for special matters not previously agreed upon, and both adopted and accepted as such for the term stated, and that the ordinance expressly provides that it shall not "in any manner impair, change or alter the existing rights, duties and obligations" of either party after the expiration of the specified time. The real cause of complaint, however, is one of serious controversy between the municipal authorities and the companies respecting the term for which the grants extend. A committee appointed by the common council to act with the mayor for such investigation reported at length their conclusions, and the grounds thereof,—in effect, that all such rights and privileges would terminate in 1903,—and then recommended the adoption of measures to dispossess the companies at the expiration of the time so reported if renewal was not arranged meantime; and the bill charges that such report was "received, approved, and printed" by the common council, and that it is the purpose of the city to adopt measures and proceed for their enforcement in conformity with the recommendation so reported and "approved." But no action has been taken by the common council beyond the alleged treatment of the report, and, without the adoption of some measure to carry the recommendations into effect, the alleged approval amounts, at the utmost, to a mere expression of opinion; and, however seriously a controversy so presented may affect the credit or other interests of the companies, it is not legislative violation of constitutional rights, within any authority called to my attention, and cannot be so treated under the well-established doctrine that no judicial interference with proposed or pending legislation, state or municipal, is tolerated. The recent case in the supreme court of Vicksburg Waterworks Co. v. Mayor, etc., of City of Vicksburg (decided April 7, 1902) 22 Sup. Ct. 585, 46 L. Ed. 808, clearly exemplifies the distinction upon which the present ruling is based. Jurisdiction was upheld in that case for legislative impairment of the existing contract obligation between the city and the waterworks company, which appeared in three elements: (1) An act of the legislature authorizing the city to issue bonds to purchase or construct waterworks; (2) a resolution or ordinance of the city denying further obligation to the old company; and (3) subsequent action by the city in holding an election for the issue of bonds as authorized, and in refusing to pay the amount due and payable under the terms of the ordinance contract. As stated in the opinion, these acts, taken together, "do not present the mere case of a breach of a private contract, to be remedied by an action at law, but disclose an intention and attempt, by subsequent legislation of the city, to deprive the complainant of its rights under an existing contract."

At the opening of the oral argument an amendment to the bill was tendered on behalf of the complainant, and the objection made to its

allowance as not germane, but ruling thereupon was reserved. It sets up an ordinance adopted April 8, 1897, which provides for compulsory transfers, and appears to be made operative only upon the Chicago Union Traction Company, named defendant in each bill as "lessee and operating agent" of the charter companies, respectively,—appearing in fact as the lessee of both systems,—and transfers are required only for passage from one original system over the other when both are owned or operated by the same company; in other words, treating the several systems so joined in one lessee as a unit. How such provision affects the rights or interests of the individual lessor is not disclosed in the proposed amendment, nor are the terms of the lease disclosed. In the absence of allegations to show injury to the lessor companies, I am of opinion that it is not germane to the controversy set up in the original bill, and that it surely furnishes no aid to the case of complainant as stockholder of the lessor company. Doubtless the lessee of the properties so joined in its possession must operate each under the respective charters, and may enjoy the rights thereof and be protected thereunder, and may be entitled to concurrence on the part of the lessor in a proper suit for such protection, if necessary. But the general averment of the fact of leasing, with no allegation to show that the lessor retained or held an interest in the operation and earnings under the lease and in the combined arrangement, raises a presumption, under well-settled rules of pleading, that no such interest remains in or is held by the lessor, to be protected by the stockholder in this suit. While lessor and stockholder may be vitally interested in the controversy touching the charter life and rights, as affecting re-entry and reversion, for which either may invoke protection, nevertheless an independent controversy between such lessee and the city, which concerns only operation and earnings under the leases so united in the lessee corporation, and does not affect the lessor, if germane, in any sense, to a bill filed by either corporation, is foreign to any interest disclosed in this complainant, and cannot be brought in on his behalf by way of amendment to his original bill,—certainly not to confer jurisdiction, through its subject-matter, not conferred by the subject-matter of the bill filed.

The demurrers must be sustained.