**NORMAN v. CONSOLIDATED EDISON CO. OF NEW YORK, Inc., et al. (HELVERING, United States Com'r of Internal Revenue, et al., Interveners).**

No. 330.

Circuit Court of Appeals, Second Circuit.

April 12, 1937.

Dwyer & Redfield, of New York City (Emanuel Redfield, of New York City, of counsel), for plaintiff-appellant.

Whitman, Ransom, Coulson & Goetz, of New York City (William L. Ransom, Jacob H. Goetz, and Pincus M. Berkson, all of New York City, of counsel), for defendants-appellees.

Robert H. Jackson and James W. Morris, Asst. Attys. Gen., and Sewall Key, Andrew D. Sharpe, and Arnold Raum, Sp. Assts. to the Atty. Gen., for intervening defendants-appellees Guy T. Helvering and James J. Hoey.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff is a stockholder of the defendant Consolidated Edison Company of New York, Inc., and has brought this suit to enjoin his corporation from paying taxes imposed upon it under title 8 of the Social Security Act (section 801 et seq. [42 U.S.C.A. § 1001 et seq.]) and likewise

to obtain a decree declaring titles 2 (section 201 et seq. [42 U.S.C.A. § 401 et seq.]) and 8 in so far as they require payment of taxes for old age benefits unconstitutional and void.

The corporation and its trustees were the original defendants in the suit and the Commissioner of Internal Revenue and the Collector of Internal Revenue in the District in which the corporation is situated were brought in as defendants upon their application to intervene, but no relief against them is asked.

The bill alleges that the defendant corporation is about to comply with the provisions of the Social Security Act (42 U.S. C.A. § 301 et seq.), that the plaintiff will suffer irreparable injury thereby because the value of his stock will be diminished by the expenditure of large sums in taxes, and that the act is unconstitutional and void. It also alleges that the plaintiff has demanded that the company refuse to comply with the terms of the act and take steps to litigate the question of its validity, but without result.

The corporation and the defendant Carlisle, who is the chairman of its board of directors, filed an answer in which they put in issue the plaintiff's right to sue and his claim of irreparable damage and averred by way of defense that the bill does not state facts sufficient to constitute a valid cause of action in equity. The answer admits that, in the absence of a final adjudication that the act is contrary to the law of the land, the corporation proposes to comply with it and alleges that prior to the enactment of the Social Security Act it had set up a "Provisional Retirement Plan" for its employees and officers, with a reserve therefor, upon their superannuation, disability, or retirement, and that such plan provided that amounts payable from any governmental or state fund or source should be deductible from any payments receivable under the plan. The answer of the corporation further alleges that upon the enactment of the Social Security Act "the statute and its pertinent provisions were duly considered by the officers and Trustees of the defendant Consolidated Edison Company of New York, Inc., in the light of the provisions and operation of the said Provisional Retirement Plan. * * * In the exercise of their powers and duties of management and direction of the business and affairs of the Company with due regard to the interests of consumers, investors and employees of the Company, the defendant Company determined that it should and would not litigate or contest the validity of the Social Security Act, but would in good faith comply with and conform to the Social Security Act, unless and until such act is adjudged unconstitutional and void. It was and is the judgment of the officers and Trustees of the defendant Company that the interests of the company, its stockholders and its employees, will be best served and advantaged by such a course and that the stockholders of the Company, including the plaintiff, will not suffer damage or loss thereby."

The defendant corporation also alleges in its answer that the court is without power to enjoin it from "continuing to comply with the Social Security Act as a matter of policy and management, unless and until the Act is finally adjudged to be unconstitutional and void."

The answer of the Commissioner and the Collector alleges that the Social Security Act is valid, that the corporation is not damaged by making the payments required thereby for the reason that those to be made under its own retirement plan would be for greater amounts. It also alleges that the bill of complaint sets forth no facts which, if true, would entitle plaintiff to relief in a court of equity.

The plaintiff moved for judgment on the pleadings as well as for an injunction pendente lite, and the defendants moved to dismiss the bill on the ground that it failed to state a cause of action. Judge Caffey denied the motions of the plaintiff and granted the motion of the defendants. A decree thus disposing of the motions of the several parties was entered, from which the plaintiff has taken the present appeal. In our opinion the decision of the court below was right and the decree should be affirmed.

■ The primary question is whether the constitutionality of the Social Security Act as applied to the Consolidated Edison Company should in the existing circumstances be determined by means of a stockholder's suit. If, as we think, it ought not to be thus tested, there will be no necessity or propriety in dealing with questions affecting constitutionality. We reach the conclusion that we have come to because the bill of complaint furnishes no proof that the plaintiff is likely to suffer irreparable

damage or that equitable relief is necessary to safeguard his rights.

The corporation is paying and, as matters now stand, proposes to continue to pay, taxes imposed by the Social Security Act as they become due. But since the passage of section 1014 of the Revenue Act of 1924 (43 Stat. 343) actions may be brought to recover taxes unlawfully exacted whether the payments are voluntary or not, though before that enactment recovery of illegal taxes could only be had where they were paid under protest. The conditions under which they may be recovered under existing statutes (26 U.S.C.A. § 1433 and §§ 1672–1673) appear in the footnote.[1]

It is evident from the foregoing statutory provisions that the Consolidated Edison Company will have four years after any taxes are paid under the Social Security Act within which to file a claim for refund. After the filing of claims there will also be the further time allowed by 26 U.S.C.A. §§ 1672–1673 (a) (2) within which to begin actions to recover taxes that may have been unlawfully exacted. It is evident that the validity or invalidity of the act will be determined long before the expiration of any of the periods within which the corporation may file refunding claims and begin actions to recover such taxes as may be declared illegal.

There is no showing in the bill of complaint that the Consolidated Edison Company will continue to pay taxes and refuse to sue for the recovery of any it has paid, if the act should be declared unconstitutional, unless perhaps they should prove no more burdensome in amount than the benefits payable under its own provisional retirement plan. Under such circumstances it seems plain that adequate remedies at law are available to the corporation and that the effect of allowing relief in the present case by means of a stockholder's bill is indirectly to avoid the prohibition of section 3224 of the U.S. Revised Statutes (26 U.S.C.A. § 1543) prohibiting suits for the purpose of restraining the assessment or collection of taxes.

The only remaining question of importance is whether the Supreme Court decisions relied upon by the plaintiff require us to reach any different conclusion than the one we have expressed. In our opinion they do not.

It is argued that a stockholder may sue whenever his corporation proceeds to pay a tax which is unconstitutional. We think that the decisions of the Supreme Court lay down no such rule. He must not only show the payment of an illegal tax but irreparable damage to his stock interest if the company submits to the exaction.

---

[1] § 1433. *Period of limitation upon refunds and credits*

All claims for the refunding or crediting of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, except as otherwise provided by law in the case of income, estate, and gift taxes, be presented to the Commissioner within four years next after the payment of such tax, penalty, or sum. The amount of the refund (in the case of taxes other than income, estate, and gift taxes) shall not exceed the portion of the tax, penalty, or sum paid during the four years immediately preceding the filing of the claim, or if no claim was filed, then during the four years immediately preceding the allowance of the refund. (R.S. § 3228; Feb. 26, 1926, c. 27, § 1112, 44 Stat. 115; May 29, 1928, c. 852, § 619 (c), 45 Stat. 878; June 6, 1932, c. 209, § 1106 (a), 47 Stat. 287.)

§§ 1672–1673. *Suits for refund*

(a) Limitations—(1) Claim. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

(2) Time. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates.

(b) Protest or duress. Such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. (R.S. § 3226; June 6, 1932, c. 209, § 1103 (a), 47 Stat. 286.)

The validity of a stockholder's bill somewhat resembling the present one was considered by the Supreme Court in Dodge v. Woolsey, 18 How. 331, 15 L.Ed. 401, which seems to have been the first decision dealing with the situation. There the directors of an Ohio bank, the charter of which stipulated the amount of tax it should pay in lieu of all taxes, refused to question the validity of a statute, increasing the rate of taxation, that had been passed in conformity with a new state constitution adopted after the granting of the bank's charter. The statute was invalid under the rule announced in the Dartmouth College Case, 4 Wheat. 518, 4 L.Ed. 629, because it impaired the obligation of contracts. The directors of the bank conceded this but objected to resisting the tax by litigation, "in consideration of the many obstacles in the way of resisting the collection of the tax in the courts of the State." The Supreme Court sustained the stockholder's bill, which alleged that the tax was so onerous on the bank that it would finally compel a suspension and final cessation of its business, on the ground that the refusal of the directors "by their own showing, partakes more of disregard of duty, than of an error of judgment * * * [and that] being a duty by their own confession, their refusal was an act outside of the obligation which the charter imposed upon them to protect * * * the franchises of the bank." Dodge v. Woolsey, 18 How. 331, 341, 345, 15 L.Ed. 401.

We think that the foregoing decision should not be regarded as depriving corporate directors of all discretion and as creating a mere dry legal rule that taxes of doubtful legality must be litigated forthwith no matter how great the cost to the company or how reasonably certain it is that other corporations will test their legality and thus clear the air.

That we are right in saying that Dodge v. Woolsey relates to situations where the damage to the stockholder can be fairly said to be irreparable reasonably follows from the later Supreme Court decisions.

In Huntington v. Palmer, 104 U.S. 482, 484, 26 L.Ed. 833, the Supreme Court in an opinion by Miller, J., reaffirmed a prior decision of the court at the same term in Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827, denied relief to a stockholder who sought to restrain his company from paying certain taxes, and remarked by way of distinguishing Dodge v. Woolsey:

"There is not, as in Dodge v. Woolsey (18 How. 331 [15 L.Ed. 401]), any averment that these taxes are so burdensome as to be destructive of the corporation itself; nor that there was any fraud on the part of the directors, nor anything to show that their decision not to resist the taxes is unwise, or opposed to the best judgment they could exercise in the matter."

In Greenwood v. Union Freight R. Co., 105 U.S. 13, 17, 26 L.Ed. 961, the Supreme Court had before it a bill by a stockholder to require his corporation to take steps to assert corporate franchises which an act of the Massachusetts Legislature had repealed. The bill was dismissed because at the time when the charter was granted a general law of the commonwealth was in force, adopted to avoid the rule of the Dartmouth College decision, that every act of incorporation should be subject "to amendment, alteration, or repeal, at the pleasure of the legislature." Miller, J., laid stress on the fact that the bill on its face presented "so strong a case of the total destruction of the corporate existence, and of the annihilation of all corporate powers," that the court might take jurisdiction of the suit and determine the issues, which, as we have said, it did determine against the stockholder by holding the repeal of the franchise valid.

Again in Detroit v. Dean, 106 U.S. 537, 1 S.Ct. 560, 564, 27 L.Ed. 300, where a stockholder's bill to restrain the revocation of corporate franchises was dismissed as collusive, Field, J., remarked generally as to the right of a stockholder to maintain such a bill, where the directors had failed to assert corporate rights that "he must show a clear breach of duty on their part in neglecting or refusing to act in the matter, amounting to such grossly culpable conduct as would lead to irremediable loss to him if he were not permitted to bring the matter before the courts."

In Pollock v. Farmers' Loan & Trust Company, 157 U.S. 429, 554, 15 S.Ct. 673, 39 L.Ed. 759, a stockholder's bill was filed to restrain the Trust Company from paying taxes under the Income Tax Act of 1894. The question of the adequacy of a remedy at law was not raised in the court below and Attorney General Richard Olney and Assistant Attorney General Edward B. Whitney who, by leave of the court, represented the government in the argument, stated in the Supreme Court that they wished only to test the constitutionality of the act and, so far as they

could do so, waived objections to the form of the remedy. The bill was filed on the theory of avoiding a multiplicity of actions to collect taxes from a great trust company, and the relief sought was only in respect to threats by the company that it would submit to the act and pay the taxes voluntarily at a time when taxes thus paid could not be recovered. The court entertained the suit, to which no officer of the United States was a party, under the doctrine of Dodge v. Woolsey, 18 How. 331, 15 L.Ed. 401. The same situation existed in Brushaber v. Union Pac. R. R. Co., 240 U.S. 1, 36 S.Ct. 236, 238, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713, where a stockholder's suit was allowed to test the constitutionality of the corporate income tax provisions of the Tariff Act of 1913 (38 Stat. 114). The Supreme Court followed Pollock v. Farmers' Loan & Trust. Co., supra, and sustained the suit on the ground that, "if the corporation paid the tax and complied with the act in other respects, * * * as it was alleged it was its intention to do," the stockholder would have no means of redress. In the case of each company there would be irreparable damage if the threats were carried out. In each case the government appeared only as amicus curiæ, so that no decree would bind it or restrain it from collecting a tax.

In Corbus v. Gold Mining Co., 187 U.S. 455, 23 S.Ct. 157, 47 L.Ed. 256, a stockholder's bill was filed to prevent a corporation from paying a tax to the Territory of Alaska. The suit was dismissed. The decision is an impressive authority against suits like the one before us. After discussing (187 U.S. 455, at page 463, 23 S.Ct. 157, 160, 47 L.Ed. 256) the rights of stockholders of a corporation to supersede the action of directors in asserting corporate rights to prevent payment of a tax, Brewer, J., remarked:

"Not only is it the general rule that equity will not restrain the collection of a tax on the mere ground of its illegality, but also, as appears by its legislation, Congress has attempted to enforce that rule and to require payment of a tax by the party charged therewith before inquiry as to its validity will be permitted. See Pacific Steam Whaling Company v. United States, 187 U.S. 447, 23 S.Ct. 154 [47 L.Ed. 253]. Now, before a court of equity will in any way help a party to thwart this intent of Congress, it should affirmatively and clearly appear that there is an absolute necessity for its interference in order to prevent irreparable injury. No considerations of mere convenience are sufficient."

In Smith v. Kansas City Title Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577, a stockholder of the defendant filed a bill to enjoin it from investing in bonds of the Federal Land Banks and Joint Stock Land Banks alleging that the bonds were illegal investments because the act creating the banks was unconstitutional. The corporation maintained that the bonds were a lawful investment and no one objected to testing their validity in a stockholder's suit. But the Supreme Court itself discussed whether the remedy invoked was a proper one, held that it was proper, that the act was constitutional, and, after entertaining the bill on the authority of the Pollock and Brushaber decisions, dismissed it on the merits. Hughes, C. J., relied on Smith v. Kansas City Title Co. in his opinion in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688. In Ashwander v. Tennessee Valley Authority, which was also a stockholder's suit, irreparable damage was alleged. The directors of the Alabama Power Company had made a contract with the Tennessee Valley Authority to sell to it for $1,150,000 certain transmission lines covering a large area and also certain real estate. By the terms of the contract, the Alabama Power Company was to give the Tennessee Valley Authority an option to operate certain urban distribution systems and each party was to submit to restrictions as to areas to be served in the sale of power. Hughes, C. J., said in respect to these matters:

"If, as plaintiffs contend, those purporting to act as a governmental agency had no constitutional authority to make the agreement, its execution would leave the Power Company with doubtful remedy, either against the governmental agency which might not be able, or against the government which might not be willing, to respond to a demand for the restoration of conditions as they now exist. In what circumstances and with what result such an effort at restoration might be made is unpredictable." 297 U.S. 288, at page 322, 56 S.Ct. 466, 471, 80 L.Ed. 688.

It seems clear that the decisions in both Smith v. Kansas City Title Co. and Ashwander v. Tennessee Valley Authority proceeded upon the theory that the stockholder would suffer irreparable damage if he was not allowed to maintain a stockhold-

er's suit to compel his corporation to assert its rights.

In Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160, a stockholder's bill was entertained for similar reasons. The stockholder there sought to enjoin his corporation from accepting and complying with the code promulgated under the Bituminous Coal Conservation Act of 1935 (chapter 824, 49 Stat. 991 [15 U.S. C.A. §§ 801–827]) and from paying taxes imposed thereby. If the corporation complied with the code, it would become subject to various burdensome regulations as to prices and labor, and any losses incurred thereby could not be restored, though the act were declared unconstitutional. If it did not comply with the code and the act was held constitutional, the taxpayer would be unable to recover any part of a tax of 15 per cent. upon the sale price of coal at the mine imposed upon those not complying with the code. Inasmuch as the tax was only at the rate of 1½ per cent. if the code was complied with, a taxpayer had to risk 13½ per cent. in order to test the act at all.

We have discussed at unusual length the precedents which may be thought to affect the plaintiff's rights to maintain a stockholder's bill because of his earnest, though as we think erroneous, contention, that it meets the tests required under the Supreme Court decisions.

We find nothing in the foregoing decisions which justifies the suit. The bill alleges no more than a present disinclination on the part of the corporate directors to resist the collection of the tax. Clearly the corporation itself could not successfully maintain a suit to enjoin collection of the taxes because of the prohibition of such suits by R.S. § 3224 (26 U.S.C.A. § 1543); but it may pay the taxes and sue to recover them back whenever the question as to the validity of the Social Security Act is determined. In the meantime there can be no reason for allowing the statutory prohibition against enjoining the collection of taxes to be whittled away through the use of a stockholder's bill that makes no better showing of irreparable damage than does the one here. To sanction such a device might well result in a widespread interference with the collection of the government revenues.

The plaintiff has suffered no irreparable damage to his stock interest, since his corporation has an adequate remedy at law for recovering any taxes that may turn out to be unlawful exactions, and there is no reason for disturbing the present judgment of the directors who have chosen to pay the taxes and to rely on bringing actions to recover them back if payment should later prove damaging to the company, rather than to suffer distraint by the tax collector. Reinecke v. Peacock (C.C.A.) 3 F.(2d) 583.

Decree affirmed.